1    Daniel J. Bugbee, WSBA No. 42412
     155 NE 100th St., Suite 205
2    Seattle, WA 98125
     Tel: (206) 489-3819
3    dbugbee@lawdbs.com
     *Local Counsel for ABL Alliance, LLLP.*

4

5

6

7

8           IN THE UNITED STATES BANKRUPTCY COURT
9            FOR THE EASTERN DISTRICT OF WASHINGTON

10

11                              No: 22-00781-FPC7

   In re:

12                             ADV. PRO. NO. _____

   JOSEPH ADLAI CERNIK and
13   SARAH ELIZABETH CERNIK,

                             COMPLAINT TO DETERMINE
14       Debtors.                     DISCHARGEABILITY OF DEBT

15

16    _____

17    ABL ALLIANCE, LLLP,

          PLAINTIFF,
18    v.

19    JOSEPH ADLAI CERNIK
   SARAH ELIZABETH CERNIK,

20        DEFENDANTS.

21

22

23        Plaintiff, ABL ALLIANCE, LLLP, ("ABL" or "Plaintiff"), by its undersigned attorneys,

24   files this Complaint under section 523 of title 11 of the United States Code requesting a money

25   judgment against defendants, Joseph Adlai Cernik ("Mr. Cernik") and Sarah Elizabeth Cernik

26

COMPLAINT - 1



A Professional Limited Liability Company
155 NE 100th Street, Suite 205   Seattle, WA 98125
206.489.3802  p  206.489.3737

("Mrs. Cernik", and together with Mr. Cernik, the "Debtors") and objects to the dischargeability of a pre-petition debt owed to ABL, and in support thereof alleges as follows:

## JURISDICTION AND VENUE

1.      This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and is brought pursuant to 11 U.S.C. § 523(a) and Rule 4007 of the Federal Rules of Bankruptcy Procedure.  Should the Court find that this is not a core proceeding, Plaintiff consents to the entry of final judgment by this Court.[1]

2.      This Court has jurisdiction as to the claims for relief sought herein under 28 U.S.C. §§ 157 and 1334.

3.      Venue is proper pursuant to 28 U.S.C. § 1409(a).

## PARTIES

4.      The Debtors are married and residing in Spokane Valley, Washington.

5.      ABL is a lender headquartered and having principal place of business in Henrico County, Virginia.

## FACTS

**A.      Transaction Documents**

6.      Pursuant to a Loan Agreement and Guaranty dated November 8, 2021, (the

---

[1] Notwithstanding any of the allegations and claims herein, the institution of this Adversary Proceeding, the filing of this Complaint and any other appearance in this Adversary Proceeding and in the Bankruptcy Case, including the submission of motions, opposition papers, and entry of referenced orders, is without waiver, and express reservation, of any and all of Plaintiff's rights, defense and remedies available at law and in equity, including, without limitation, under any agreement with Defendant, the Uniform Commercial Code, any other applicable federal or state law and/or commercial code, and the Federal Arbitration Act, 9 U.S.C. § 1 et seq. If and when Plaintiff shall file a proof of claim in the Bankruptcy Case (the "Proof of Claim"), Plaintiff expressly incorporates any reservation of rights incorporated in the Proof of Claim.



DBS | LAW

A Professional Limited Liability Company
155 NE 100th Street, Suite 205   Seattle, WA 98125

COMPLAINT - 2

"Agreement"), ABL loaned Mrs. Cernik the principal amount of $105,257.34, minus closing fees, which was deposited in the Debtors' joint Bank of America account ending in 3343 (the "Account").  A true and correct copy of the Agreement is attached as **Exhibit A**.

7.      In return, Mrs. Cernik promised to repay ABL the principal loan with interest in an amount equal to $219,441.70 (the "Repayment Amount"), by authorizing ABL to debit specified remittances from the Account in the amount of $1,828.68 for 120 months, beginning on January 8, 2022.

8.      Pursuant to the terms of the Agreement, Mrs. Cernik unconditionally guaranteed to ABL, among other things, payment and performance of all of the representations, warranties and covenants she made in the Agreement.  Ex. A.

**B.      Misrepresentations Prior to the Entering the Agreements**

9.      Prior to funding under the Agreement, Mrs. Cernik acknowledged and represented to ABL that she wanted to consolidate the below listed debts:

| Original Request-Debt Consolidation Accounts (#): 13 | | | |
|---|---|---|---|
| **Account** | **Balance** | **Monthly Payment** | |
| Medical/Dental Debt | $ | 6,000.00 | $ | 50.00 |
| Capital One Joint acct | $ | 13,000.00 | $ | 400.00 |
| TDRC/SHANE 3143(C) | $ | 1,147.00 | $ | 41.00 |
| CAP1/WSI 2346 | $ | 404.00 | $ | 29.00 |
| SYNCB/CARECR 1132 | $ | 1,157.00 | $ | 38.00 |
| KOHLS/CAPONE 4836 | $ | 2,070.00 | $ | 63.00 |
| BK OF AMER 9054 | $ | 2,415.00 | $ | 83.00 |
| SYNCB/AMAZON 0629 | $ | 1,500.00 | $ | 203.00 |
| UPGRADE INC 6296 | $ | 9,637.00 | $ | 320.00 |
| UPSTART NETW 9902 | $ | 11,699.00 | $ | 273.00 |
| CROSRIV/SEED 7DM4 | $ | 5,700.00 | $ | 216.00 |
| FIGURELEND 2341 | $ | 25,527.00 | $ | 626.00 |
| FIGURELEND 7699 | $ | 19,752.00 | $ | 695.00 |
| **Total (#): 13** | **$** | **100,008.00** | **$** | **3,037.00** |



**DBS** | LAW

A Professional Limited Liability Company
155 NE 100th Street, Suite 205    Seattle, WA 98125

10.     In addition, prior to entering into the Agreement, an ABL representative asked Mrs. Cernik whether she held any cryptocurrency accounts, specifically with Coinbase per the below transcribed conversation:

> **ABL**: Do you have a Coinbase? Do you have any balance in Coinbase?
>
> **Debtor**: Not currently. I lost it when the Bitcoin... I had some Bitcoin and it just like, um, a month and a half or two months ago. And so I was like yeah we're done with that.

11.     However, during a Rule 2004 Examination held on February 16, 2023, Mrs. Cernik denied discussing Coinbase with ABL.[2]

12.     Based on the bank statements obtained by ABL pursuant to the Rule 2004 Order and Subpoena, Mrs. Cernik was using the ABL funds to purchase cryptocurrency at an alarming rate.

13.     For example, based on the Account statements between November 11 and December 15, 2021 and Mrs. Cernik's Rule 2004 Examination testimony, she used the following sums from the Bank of America account in which ABL's funds were held to the below accounts in order to purchase cryptocurrency:

- $26,989.00 to a Coinbase account
- $11,500.00 to a Zelle account
- $23,175.00 to a MoonPay account
- $3,090.00 to a Paybis (Bitcoin)

---

[2] Official transcript of the Rule 2004 Examination is being prepared by the Court reporter.



DBS│LAW

A Professional Limited Liability Company
155 NE 100th Street, Suite 205   Seattle, WA 98125

14.     In addition, on November 12, 2021, the Debtor transferred $40,000 to the joint Bank of America savings account ending in 3356, from which $5,500 was transferred to her Zelle account.

15.     During the Rule 2004 Examination, Mrs. Cernik testified that funds transferred to her Zelle account could have also been deposited in a Chase Bank account ending in 1762, but the Debtors failed to provide those bank statements, despite their obligation to do so.

16.     In sum, the Debtors received $100,000 from ABL on November 10, 2021, pursuant to the Agreement, and transferred approximately $70,254.00 to crypto currency investments. A true and correct copy of the Account statement from November 11 to December 15, 2021 is attached as **Exhibit B**.

17.     During the Rule 2004 Examination, the Debtors failed to provide statements for other accounts,[3] including:

- Bank statements for Chase Account x 1762,

- Transaction history for all investment accounts and cryptocurrency accounts – *e.g.* Bitcoin, Coinbase, MoonPay

- Transaction history for PayPal

- Transaction history for Venmo

- Transaction history for Zelle, Cashapp

- Bank statements for small business – Wrap my Peanut, LLC dba PureBlissSleep

---

[3] The Debtors were asked to provide these documents to allow ABL the opportunity to review and continue the Rule 2004 Examination but have failed to so and did not consent to extending the discharge/dischargeability deadline. Therefore, the extent of the Debtors' misrepresentations is currently unknown.

COMPLAINT - 5



**DBS | LAW**
A Professional Limited Liability Company
155 NE 100th Street, Suite 205   Seattle, WA 98125
206.489.3802   Fax 206.900.3737

18.     Further, prior to entering into the Agreement, Mrs. Cernik represented to ABL that she was seeking a consolidation of Debtors' debts to pay off/down short-term loans, such as loans taken from Figure Lending, Upstart, and Upgrade to pay medical bills, but as the bank statements show, the majority of all ABL loan proceeds went toward cryptocurrency speculation.

19.     Pursuant to the Rule 2004 Order and Subpoena, the Debtors were to produce "All documents evidencing payments made towards the Debtors' medical expenses from January 1, 2021 to present." In response, the Debtors produced screenshots showing $3,036.31 paid in medical expenses from January 1, 2021 to December 1, 2022, which stands in stark contravention of her § 341 Meeting testimony and representations she made in order to obtain funding from ABL.

20.     ABL relied on Mrs. Cernik's representations that the loan proceeds would be used to consolidate high interest loans, thereby allowing her to make one monthly payment to ABL of approximately $1,800, as opposed to approximately $3,000 for her existing creditors.

21.     However, contrary to the representations she made to ABL during the application process, Mrs. Cernik used the funds to gamble on cryptocurrency, and the proceeds of ABL's loan were not used for their stated purpose of consolidation.

22.     ABL justifiably relied on the above representations made by Mrs. Cernik in entering into the Agreement and funding the loan.

23.     Pursuant to the Agreement, Mrs. Cernik was to maintain the Account with sufficient funds to cover the payments due to ABL.

24.     However, Mrs. Cernik's immediately diverted ABL's funds to cryptocurrency

DBS | LAW
A Professional Limited Liability Company
155 NE 100th Street, Suite 205    Seattle, WA 98125
206.489.3802    fax 206.903.8737

accounts, indicating that Mrs. Cernik had neither the intention to honor the Agreement nor to repay the loan.

25. For example, ABL funded the Account on November 10, 2021, but Mrs. Cernik made only five (5) payments (January to May, 2022) and then on June 6, 2022, she withdrew substantially all the funds in the Account. A true copy of the Account statement for the period May 13 to June 13, 2022 is attached as **Exhibit C**.

26. Using cryptocurrency such as Bitcoin allows users to also keep their financial transactions anonymous, and Mrs. Cernik failed to maintain records that show her true financial condition.

27. On August 23, 2022, the Debtors filed a joint bankruptcy case under Chapter 7 of the Bankruptcy Code. In the Schedules, the Debtors disclosed that they had $664,310.30 in unsecured/non-priority debt, and upon review, it appears most, if not all, of the debts were incurred after June 2021 and coincide with when charges for Coinbase first appear in the Account statements.

28. Although Mrs. Cernik obtained the ABL loan, Mr. Cernik is a joint account holder to the Account, had access to the Account, and knew/or had reason to know of Mrs. Cernik's cryptocurrency speculating. Upon information and belief, Mr. Cernik also obtained loans for other lenders to supplement cryptocurrency purchases. For example, Mr. Cernik took out two loans from Figure Lending in October 2021 and January 2022 for approximately $51,000.00. Because of the Debtors' failure to produce all requested documents pursuant to the Rule 2004 Order and Subpoena, it is unknown where these funds were deposited or how they were used.

DBS | LAW
A Professional Limited Liability Company
155 NE 100th Street, Suite 205   Seattle, WA 98125
206.489.3802   206.489.3737

29.     The Debtors engaged in a pattern and practice of obtaining individual loans and failed to disclose the extent of their loan obligations to ABL.

30.     Upon information and belief, Mr. Cernik had actual and/or constructive notice of the ABL Agreement.

31.     Upon information and belief, Mr. Cernik enjoyed access to the funds deposited into the Account which he held jointly with Mrs. Cernik and knew and/or had reason to know of Mrs. Cernik's misrepresentations to ABL to obtain the funding.

32.     Upon information and belief, Mr. Cernik participated in defrauding ABL by his acquiescence, consent, and approval.

33.     The Debtors failed to provide bank records and cryptocurrency account records, and the extent of the Debtors' fraud is unknown, however, Mrs. Cernik obtained money from ABL by false pretenses, false representation(s), and/or actual fraud.

34.     ABL is a creditor in this bankruptcy case and to date is owed at least $137,889.46 as of the date of this filing, which total is comprised of the principal balance of $104,227.66, interest at the default rate of 21.99% (from June 8, 2022) in the amount of $16,640.30, late fees of $1,250.00 ($250.00 late fee for five missed payments) and reasonable attorney's fees of $15,421.50 (which continue to accrue) and $350.00 cost for filing this action (pursuant to Section 11.2 of the Contract and Guaranty at ¶ 1).

35.     Mrs. Cernik's conduct, including but not limited to, purchasing cryptocurrency and not consolidating debts as represented but, instead, taking out additional financing to fund her cryptocurrency speculation, demonstrates that Mrs. Cernik never intended to perform her



**DBS** | LAW

A Professional Limited Liability Company
155 NE 100th Street, Suite 205  Seattle, WA 98125
206.489.3802  fax 206.512.3737

obligations under the Agreement and obtained money from ABL by false pretenses, false statements, or actual fraud.

## <u>COUNT I</u>

### (Nondischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(2)(A))

36.     ABL repeats and incorporates the allegations set forth above as though fully stated herein.

37.     Mrs. Cernik's liability to ABL, as alleged herein, is a debt for money owed and services provided within the meaning of 11 U.S.C. § 523(a)(2).

38.     Mrs. Cernik obtained money and services from Plaintiff by false pretenses, false representation(s), and/or actual fraud within the meaning of 11 U.S.C § 523(a)(2)(A).

39.     As more fully detailed herein, upon information and belief, Mrs. Cernik made material misrepresentations of fact to ABL, including, but not necessarily limited to, representing that: (i) the ABL loan funds would be used for debt consolidation of specific debts, (ii) that the funding would not be used for cryptocurrency purchases, and (iii) she would use one Account for payment under the Agreement and provide ABL with irrevocable access to that Account for payment.

40.     Mrs. Cernik made material omissions of fact that induced ABL into funding the loan, with reckless disregard of the truth.

41.     At the time the representations and/or material omissions were made, Mrs. Cernik knew that her representations and omissions were false, untrue, misleading, and, as a direct and proximate cause of these intentional misrepresentations and omissions, she intended that ABL be induced to tender the loan amounts.



A Professional Limited Liability Company
155 NE 100th Street, Suite 205    Seattle, WA 98125
206.489.3802    206.489.3737

42.     Upon information and belief, Mrs. Cernik intended to induce ABL to act upon her misrepresentations and/or material omissions, and ABL justifiably relied upon such false representations and omissions by accepting her loan application and funding the loan.

43.     ABL suffered damages as a direct and proximate consequence of the misrepresentations made by Mrs. Cernik.

44.     As a result of misrepresentations and fraud by Mrs. Cernik, Mrs. Cernik obtained from ABL the loan proceeds which would not have been authorized by ABL if the misrepresentations had not been made, or if material facts that were omitted and concealed, were actually disclosed.

45.     The acts and omissions that constitute a breach or default of the Agreement were performed, or omitted by Mrs. Cernik.

46.     Upon information and belief, Mr. Cernik had actual and/or constructive notice of the ABL Agreement.

47.     Upon information and belief, Mr. Cernik enjoyed access to the funds deposited into the Account and knew and/or had reason to know of Mrs. Cernik's misrepresentations to ABL to obtain the funding.

48.     Upon information and belief, Mr. Cernik participated in defrauding ABL by his acquiescence, consent, and approval.

49.     ABL is entitled to an Order from this Court declaring that, pursuant to 11 U.S.C. § 523(a)(2)(A), the subject debt owed by Debtors to ABL is non-dischargeable. ABL is also entitled to a money judgment against Mrs. Cernik and alternatively, against both Debtors, according to its proof to be presented at trial, along with its attorneys' fees and costs of suit

DBS | LAW
A Professional Limited Liability Company
155 NE 100ᵗʰ Street, Suite 205    Seattle, WA 98125



incurred in prosecuting this Complaint, interest on the judgment at the default rate, and such other relief as the Court deems just and proper.

<div align="center">

**COUNT II**
**(Nondischargeability of Debt Pursuant to 11 U.S.C. §523(a)(2)(B))**

</div>

50.     ABL repeats and incorporates the allegations set forth above as though fully stated herein.

51.     The Debtors' liability to ABL, as alleged herein, is a debt for money owed and services provided within the meaning of 11 U.S.C. § 523(a)(2).

52.     Pursuant to 11 U.S.C. §523(a)(2)(B), a debt in which a debtor obtains money by a statement in writing that is materially false respecting an insider's financial condition, on which the creditor reasonably relied, and which the debtor caused to be published with intent to deceive is nondischargeable.

53.     Upon information and belief, with the intent to deceive, Mrs. Cernik did obtain money from ABL by the following written, materially false statements that she caused to be made or published, respecting his and an insider's (Mr. Cernik) financial condition on which ABL reasonably relied. The statements included, among others, that: (i) the funds would be used for debt consolidation of specific debts, (ii) that the funding would not be used for cryptocurrency purchases, and (iii) Mrs. Cernik would use the Account to make the payments due under the Agreement and provide ABL with irrevocable access to that Account for payment.

54.     Upon information and belief, as fully detailed above, at the same time the representations were made, Mrs. Cernik knew these representations were materially false, untrue and misleading.



A Professional Limited Liability Company
155 NE 100th Street, Suite 205   Seattle, WA 98125
206.489.3802 | f. 206.577.0737

23-80004-FPC   Doc 1   Filed 02/28/23   Entered 02/28/23 16:29:25   Pg 11 of 60

55.     Mrs. Cernik caused these false statements to be made in writing, including, but not limited to publishing such statements in the pre-funding documentations and Agreements.

56.     Mr. Cernik is an insider of Mrs. Cernik, because, at the time, the Debtors were married, within the meaning of "insider" under 11 U.S.C. § 101(31)(A)(i).

57.     ABL reviewed and reasonably relied on these written statements made by Mrs. Cernik and, in relying thereon, decided to transfer the subject loan funds to the joint Account.

58.     ABL suffered damages as a direct and proximate consequence of the materially false statements made by Mrs. Cernik.

59.     Upon information and belief, all of the acts and omissions that constitute a breach or default of the Agreement were performed or omitted by Mrs. Cernik.

60.     Upon information and belief, Mr. Cernik had actual and/or constructive notice of the ABL Agreement.

61.     Upon information and belief, Mr. Cernik enjoyed access to the funds deposited into the Account, and he knew and/or had reason to know of Mrs. Cernik's misrepresentations to ABL to obtain the funding.

62.     Upon information and belief, Mr. Cernik participated in defrauding ABL by his acquiescence, consent, and approval.

63.     The Debtors' activities described above constitute obtaining money by materially false written statement regarding an insider's financial condition, on which ABL relied, and which Mrs. Cernik made with the intent to deceive.

64.     ABL is entitled to an Order from this Court declaring that, pursuant to 11 U.S.C. § 523(a)(2)(B), the subject debt owed by Debtors to ABL is non-dischargeable.  ABL is also



A Professional Limited Liability Company
155 NE 100th Street, Suite 205    Seattle, WA 98125

entitled to a money judgment against Mrs. Cernik and/or the Debtors, jointly and severally, according to its proof, plus an award of its reasonable attorneys' fees and costs of suit incurred in prosecuting this Complaint, along with interest on the judgment at the default rate, and such other relief as the Court deems just and proper.

## **COUNT III**

### **(Nondischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(4))**

65.     ABL repeats and incorporates the allegations set forth above as though fully stated herein.

66.     The Debtor's liability to ABL, as alleged herein, is a debt "for fraud or defalcation while acting in a fiduciary capacity or larceny" within the meaning of § 523(a)(4) of the Bankruptcy Code.

67.     As set forth above, Mrs. Cernik fraudulently induced ABL to enter into the Agreement, with the intent to convert the funds without ABL's consent, which she accomplished. As a result, ABL is damaged in an amount of no less than $137,889.46.

68.     Upon information and belief, Mrs. Cernik entered into the Agreement with the specific intent to transfer or hide the loan funds and prevent ABL from collecting the obligations owed to it.

69.     Upon information and belief, Mrs. Cernik obtained the funding and took the funding by committing larceny.

70.     Upon information and belief, Mrs. Cernik misappropriated portions of the funding for her own benefit by fraudulent intent or deceit.

71.     Mrs. Cernik used the funds received from ABL to purchase cryptocurrency and



DBS | LAW
A Professional Limited Liability Company
155 NE 100th Street, Suite 205   Seattle, WA 98125
206.489.3802  |  206.973.3737

failed to use the funds for the purposes she represented in the pre-funding documentations.

72.     Virginia law governs the Agreement.

73.     ABL sustained damages as a result of the Debtors' larceny of the subject loan funding.

74.     Upon information and belief, the Debtors conspired to feloniously take the ABL funding with intent to convert those funds to their own use outside of an in contradiction to the purposes they stated to ABL.

75.     Mrs. Cernik fraudulently took and carried away the funding with intent to convert such property to Debtors' use without the consent of ABL.

76.     The Debtors converted those funds for their own benefit/purpose by gambling on cryptocurrency, which constitutes larceny.

77.     Upon information and belief, all of the acts and omissions that constitute a breach or default of the Agreement were performed or omitted by, at the direction of, or with the consent of, both Debtors.

78.     Upon information and belief, all of the acts and omissions that constitute a breach or default of the Agreement were performed at, or omitted by, the direction of Mrs. Cernik.

79.     Upon information and belief, Mr. Cernik had actual and/or constructive notice of the ABL Agreement.

80.     Upon information and belief, Mr. Cernik enjoyed access to the funds deposited into the Account, knew and/or had reason to know of Mrs. Cernik's misrepresentations to ABL to obtain the funding.



DBS | LAW
A Professional Limited Liability Company
155 NE 100th Street, Suite 205    Seattle, WA 98125
206.389.3802 | 206.337.0737

81.     Upon information and belief, Mr. Cernik participated in defrauding ABL by his acquiescence, consent and approval.

82.     ABL has been damaged as a result of the foregoing actions of the Debtors and the debt is non-dischargeable pursuant to 11 U.S.C. § 523(a)(4) in an amount to be proven at trial.

83.     ABL is entitled to an Order from this Court declaring that, pursuant to 11 U.S.C. § 523(a)(4), the debt to ABL is non-dischargeable and a judgment for money damages pursuant to the request herein.  ABL is also entitled to its attorneys' fees and costs of suit incurred in prosecuting this Complaint along with interest at the default rate, and such other relief as the Court deems just and proper.

**COUNT IV**
**(Nondischargeability of Debt Pursuant to 11 U.S.C. §523(a)(6))**

84.     ABL repeats and incorporates the allegations set forth above as though fully stated herein

85.     Pursuant to section 523(a)(6) of the Bankruptcy Code, a debt incurred by a debtor who engages in willful malicious conduct which results in damage shall be nondischargeable.

86.     ABL believes and alleges that Mrs. Cernik entered into the Agreement with the specific intent to divert the funds for her own use.  In addition, upon information and belief, Mrs. Cernik made false statements to ABL with the intent to induce ABL to advance funds.

87.     Upon information and belief, within a short period after ABL transferred the funds to the Account, Mrs. Cernik diverted the funds away from the Account.

88.     Further, upon information and belief, Mrs. Cernik willfully and maliciously



DBS | LAW

A Professional Limited Liability Company
155 NE 100th Street, Suite 205   Seattle, WA 98125
206.389.3801  | 206.979.0737

executed the Agreement and represented to ABL, *inter alia*, that: (i) the funds would be used for debt consolidation of specific debts, (ii) that the funding would not be used for cryptocurrency purchases, and (iii) Mrs. Cernik would use one Account for payment under the Agreement and provide ABL with irrevocable access to that Account for payment.

89.     Upon information and belief, all of the acts and omissions that constitute a breach or default of the Agreement were performed or omitted by Mrs. Cernik.

90.     Upon information and belief, Mr. Cernik had actual and/or constructive notice of the ABL Agreement.

91.     Upon information and belief, Mr. Cernik enjoyed access to the funds deposited into the Account and knew and/had reason to know of Mrs. Cernik's misrepresentations to ABL to obtain the funding.

92.     Upon information and belief, Mr. Cernik participated in defrauding ABL by his acquiescence, consent, and approval.

93.     The Debtors received money from Plaintiff based on Mrs. Cernik's fraudulent statements and acts. The Debtors drained the Account by June 2022 (just months after receiving the loan funds pursuant to the Agreement), took out additional financing, did not use the funding for debt consolidation of specific debts, but converted the funds to purchase cryptocurrency. In sum, these acts were deliberate and intentional in knowing disregard of the rights of ABL that caused damage to ABL.

94.     The Debtors' activities described herein constitute willful and malicious conduct which resulted in damage to ABL and should prevent the discharge of the subject debt.

95.     ABL is entitled to an Order from this Court declaring that, pursuant to 11 U.S.C.


A Professional Limited Liability Company
155 NE 100th Street, Suite 205    Seattle, WA 98125
206.489.3802 | 206.466.0737

§ 523(a)(6), the subject debt to ABL is non-dischargeable and a judgment for money damages pursuant to the request herein be entered against Mrs. Cernik and/or both Debtors. ABL is also entitled to its attorneys' fees and costs of suit incurred in prosecuting this Complaint. along with interest on the judgment at the default rate, and such other relief as the Court deems just and proper.

## PRAYER FOR RELIEF

**WHEREFORE**, ABL requests judgment against the Debtors as follows:

A.      On each of Counts I, II, III, and IV, for judgment against Mrs. Cernik and/or both Debtors in the amount owed under the Agreement to ABL and a determination that such judgment is not dischargeable in the Bankruptcy Case, in any other chapter under title 11 to which this case may be converted, and in any future bankruptcy case filed by or against the Debtor(s);

B.      Granting interest at the default rate, attorneys' fees and costs herein incurred as part of the judgment; and

C.      Granting such other and further relief as this Court may deem just and proper.


Date:  February 28, 2023                          Respectfully submitted,

                                        **ABL ALLIANCE, LLLP,**

                                        By counsel



A Professional Limited Liability Company
155 NE 100th Street, Suite 205   Seattle, WA 98125
206.489.3802 | 206.973.0737

/s/ Daniel J. Bugbee
Daniel J. Bugbee, WSBA No. 42412
DBS LAW
155 NE 100th Street, Suite 205,
Seattle, WA 98125
Telephone:  (206) 489-3819
Facsimile:  (206) 973-8737
Email:  dbugbee@lawdbs.com
  *Local Counsel for ABL Alliance, LLLP*

/s/ Klementina V. Pavlova
Klementina V. Pavlova *(admitted pro hac vice)*
SANDS ANDERSON PC
1111 East Main Street, Floor 24 (23219)
P.O. Box 1998
Richmond, Virginia 23218-1998
Telephone: (804) 783-6795
Facsimile:  (804) 783-7291
Email:  kpavlova@sandsanderson.com
  *Counsel for ABL Alliance, LLLP*

**DBS | LAW**
A Professional Limited Liability Company
155 NE 100th Street, Suite 205    Seattle, WA 98125
206.489.3819    206.973.8737

<div align="center">

**PROMISSORY NOTE AND SECURITY AGREEMENT**

</div>

**Date:** 11/08/2021

FOR VALUE RECEIVED, and subject to the terms and conditions of this Promissory Note and Security Agreement (the "Note" or "Agreement"), Sarah E. Cernik d/b/a Sarah E. Cernik, RN ("**Borrower**"), hereby unconditionally, jointly and severally if more than one, promises to pay to the order of ABL Alliance, LLLP or its assigns ("**Noteholder**", and together with Borrower, the "**Parties**"), the total sum of $ 219,441.70 (the "**Loan Amount**"), which represents the total of payments of principal plus interest on the Principal Amount which will become due hereunder at the Note Rate plus the Facility Fee from the date hereof until the Maturity Date, with sums being payable in equal monthly installments, all as set forth in the Addendum hereto.

1.      Definitions. In addition to terms defined above, capitalized terms used herein shall have the meanings set forth in this Section 1.

"**Addendum**" means Addendum A attached hereto and incorporated herein.

"**Business Day**" means a day other than a Saturday, Sunday, or other day on which commercial banks in Richmond, Virginia are authorized or required by law to close.

"**Collateral**" has the meaning set forth in Section 4.1.

"**Debt**" of the Borrower means all (a) indebtedness for borrowed money; (b) obligations for the deferred purchase price of property or services, except trade payables arising in the ordinary course of business; (c) obligations evidenced by notes, bonds, debentures, or other similar instruments; (d) obligations as lessee under capital leases; (e) obligations in respect of any interest rate swaps, currency exchange agreements, commodity swaps, caps, collar agreements, or similar arrangements entered into by the Borrower providing for protection against fluctuations in interest rates, currency exchange rates, or commodity prices or the exchange of nominal interest obligations, either generally or under specific contingencies; (f) obligations under acceptance facilities and letters of credit; (g) guaranties, endorsements (other than for collection or deposit in the ordinary course of business), and other contingent obligations to purchase, to provide funds for payment, to supply funds to invest in any Person, or otherwise to assure a creditor against loss, in each case, in respect of indebtedness set out in clauses (a) through (f) of a Person other than the Borrower; and (h) indebtedness set out in clauses (a) through (g) of any Person other than Borrower secured by any lien on any asset of the Borrower, whether or not such indebtedness has been assumed by the Borrower.

"**Default**" means any of the events specified in Section 9 which constitutes an Event of Default or which, upon the giving of notice, the lapse of time, or both pursuant to Section 9 would, unless cured or waived, become an Event of Default.

"**Default Rate**" means, the lesser of (a) the Note Rate plus 5%, or (b) the maximum interest rate allowable under applicable law.

"**Event of Default**" has the meaning set forth in Section 9.

"**Facility Fee**" has the meaning set forth in the Section 2.7.

"**First Priority**" means, with respect to any lien and security interest purported to be created in any Collateral pursuant to this Agreement, such lien and security interest that is the most senior lien to which such Collateral is subject (subject only to liens permitted under this Agreement).

"**GAAP**" means generally accepted accounting principles in the United States of America as in effect from time to time.

"**Governmental Authority**" means the government of any nation or any political subdivision thereof, whether at the national, state, territorial, provincial, municipal, or any other level, and any agency, authority, instrumentality, regulatory body, court, central bank, or other entity exercising executive, legislative, judicial, taxing, regulatory, or administrative powers or functions of, or pertaining to, government (including any supranational bodies such as the European Union or the European Central Bank).

"**Law**" as to any Person, means any law (including common law), statute, ordinance, treaty, rule, regulation, policy, or requirement of any Governmental Authority and authoritative interpretations thereon, whether now or hereafter in effect, in each case, applicable to or binding on such Person or any of its properties or to which such Person or any of its properties is subject.

"**Lien**" means any mortgage, pledge, hypothecation, encumbrance, lien (statutory or other), charge, or other security interest.

"**Material Adverse Effect**" means a material adverse effect on (a) the business, assets, properties, liabilities (actual or contingent), operations, condition (financial or otherwise), or prospects of the Borrower; (b) the validity or enforceability of the Note; (c) the perfection or priority of any Lien purported to be created under; (d) the rights or remedies of the Noteholder hereunder or under; or (e) the Borrower's ability to perform any of its material obligations hereunder.

"**Maturity Date**" means the earlier of (a) __12/07/2031____ and (b) the date on which all amounts under this Note shall become due and payable pursuant to Section 10.

"**Note Rate**" has the meaning set forth in Section 2.3.

"**Order**" as to any Person, means any order, decree, judgment, writ, injunction, settlement agreement, requirement, or determination of an arbitrator or a court or other Governmental Authority, in each case, applicable to or binding on such Person or any of its properties or to which such Person or any of its properties is subject.

"**Person**" means any individual, corporation, limited liability company, trust, joint venture, association, company, limited or general partnership, unincorporated organization, Governmental Authority, or other entity.

"**Principal Amount**" has the meaning set forth in the Addendum.

"**Proceeds**" means "proceeds" as such term is defined in section 9-102 of the UCC and, in any event, shall include, without limitation, all dividends or other income from the Collateral, collections thereon, or distributions with respect thereto.

"**UCC**" means the Uniform Commercial Code as in effect from time to time in the Commonwealth of Virginia or, when the laws of any other state govern the method or manner of the perfection or

23-80004-FPC    Doc 1    Filed 02/28/23    Entered 02/28/23 16:29:23    Pg 20 of 60

enforcement of any security interest in any of the Collateral, the Uniform Commercial Code as in effect from time to time in such state.

2.      Payment Amount and Due Date; Optional Prepayments; Interest.

    2.1     Payment Dates.  The Loan Amount shall be payable in equal consecutive monthly installments in the amount and beginning on the date as set forth on the Addendum, and on the same day of every month thereafter, provided that all amounts then outstanding under this Note, including all accrued and unpaid interest and other amounts payable under the Note shall be due and payable on the Maturity Date.

    2.2     Optional Prepayment.  Borrower has no right to prepay the Loan Amount, in whole or in part, for thirty-six (36) months from the date of this Note.   Prepayment after thirty-six (36) months requires Noteholder's prior written consent, which Noteholder may not unreasonably withhold. Noteholder may condition its consent to any prepayment to appropriate amendment to this Agreement and to such other terms as Noteholder, in its discretion, may require.  In the event of a prepayment permitted under the terms of this Agreement, Borrower shall pay all accrued interest, any modification and amendment fee, and any other outstanding fees owed, in addition to the principal amount prepaid.

    2.3     Interest Rate. The outstanding balance of the Principal Amount shall bear interest at the rate per annum of  __16.99%__  (the "Note Rate").

    2.4     Default Interest. Notwithstanding any contrary provision in this Note or in any agreement, document or instrument pertaining to this Note, after the occurrence of an Event of Default and, at the option of Noteholder, the outstanding principal balance of this Note shall bear interest at the Default Rate.

    2.5     Computation of Interest. All computations of interest and fees shall be made on the basis of a year of 360 days, and the actual number of days elapsed. Interest shall accrue on the Loan on the day on which such Loan is made, and shall not accrue on the Loan for the day on which it is paid.

    2.6     Interest Rate Limitation. If at any time and for any reason whatsoever, the interest rate payable on the Loan shall exceed the maximum rate of interest permitted to be charged by Noteholder to Borrower under applicable Law, such interest rate shall be reduced automatically to the maximum rate of interest permitted to be charged under applicable Law

    2.7     Intentionally left blank.


3.      Payment Mechanics.


    3.1     Manner of Payments. All monthly installment payments shall be made in the form of an ACH transfer directly from Borrower's business account. Borrower's termination of an ACH authorization without Noteholder's prior written consent shall be considered an Event of Default. Should Borrower terminate an ACH authorization with the consent of Noteholder and deliver payments by check or other non-ACH form of payment, Borrower agrees to pay a service, handling, and accounting expense fee to Noteholder equal to fifteen percent (15%) of the payment then due.

    3.2     Application of Payments. All payments made hereunder shall be applied, at Noteholder's option, first to the payment of any fees or charges outstanding hereunder, second to accrued interest,

and third to the payment of the principal amount outstanding under the Note.

       3.3     <u>Business Day Convention</u>. Whenever any payment to be made hereunder shall be due on a day that is not a Business Day, such payment shall be made on the next succeeding Business Day and such extension will be taken into account in calculating the amount of interest payable under this Note.

       3.4     <u>Rescission of Payments</u>.  If any payment made by Borrower under this Note is rescinded or must otherwise be restored or returned upon the insolvency, bankruptcy, or reorganization of Borrower or otherwise, Borrower's obligation to make such payment shall be reinstated as though such payment had not been made.

       3.5     <u>Late Payment Fee</u>. For each payment of principal, interest or other amount due to the Noteholder under this Note which is not paid when due (without regard to any applicable grace periods) Noteholder may charge and Borrower shall pay a late fee equal to the greater of (a) ten percent (10%) of the amount of such late payment and (b) $250.00, to cover the extra expense involved in handling such delinquent payment.

4.     <u>Grant of Security Interest</u>.

       4.1.     <u>Collateral</u>. To secure the performance and payment of all obligations by Borrower under this Note, Borrower hereby pledges and grants to Noteholder, and hereby creates in favor of Noteholder, a continuing First Priority lien and security interest in and to all of Borrower's right, title, and interest in and to the following, wherever located, whether now existing or hereafter from time to time arising or acquired (collectively, the "Collateral"):

            (a)     all fixtures and personal property of every kind and nature including all accounts (including health-care-insurance receivables), goods (including inventory and equipment), documents (including, if applicable, electronic documents), instruments, promissory notes, chattel paper (whether tangible or electronic), letters of credit, letter-of-credit rights (whether or not the letter of credit is evidenced by a writing), securities and all other investment property, general intangibles (including all payment intangibles), money, deposit accounts, and any other contract rights or rights to the payment of money; and

            (b)     all Proceeds and products of each of the foregoing, all books and records relating to the foregoing, all supporting obligations related thereto, and all accessions to, substitutions and replacements for, and rents, profits and products of, each of the foregoing, and any and all Proceeds of any insurance, indemnity, warranty, or guaranty payable to the Borrower from time to time with respect to any of the foregoing.

       4.2     <u>Perfection of Security Interest.</u> Borrower shall immediately take all actions as may be requested by Noteholder at any time to perfect the security interest of Noteholder in the Collateral. Borrower hereby irrevocably authorizes Noteholder at any time to file in any relevant jurisdiction any financing statements and amendments thereto that contain the information required by each applicable jurisdiction for the filing of any financing statement or amendment relating to the Collateral, including any financing or continuation statements or other documents for the purpose of perfecting, confirming, continuing, enforcing, or protecting the security interest granted by Borrower hereunder.

       4.3     <u>Further Assurances</u>. Borrower agrees that at any time, at Borrower's expense, Borrower will promptly execute and deliver all further instruments and documents, obtain such agreements from third parties, and take all further action, that may be necessary or desirable, or that Noteholder may

reasonably request, in order to create and/or maintain the validity, perfection, or priority of any security interest granted or purported to be granted hereby or to enable Noteholder to exercise and enforce its rights and remedies hereunder or under any other agreement with respect to any Collateral. Noteholder may take any other action Noteholder deems necessary for the maintenance and preservation of any of the Collateral and Borrower shall immediately reimburse he Noteholder for all expenses incurred by Noteholder in doing so. Noteholder may examine and inspect any of the Collateral, wherever located, at any reasonable time.

       4.4    <u>Noteholder Appointed Attorney-in-Fact</u>. Borrower hereby appoints Noteholder as Borrower's attorney-in-fact, with full authority in the place and stead of Borrower and in the name of Borrower or otherwise, from time to time in Noteholder's discretion, to take any action and to execute any instrument which Noteholder may deem necessary or advisable to accomplish the purposes of this Agreement (but Noteholder shall not be obligated to and shall have no liability to Borrower or any third party for failure to do so or take any other action). This appointment, being coupled with an interest, shall be irrevocable. Borrower hereby ratifies all that said attorneys shall lawfully do or cause to be done by virtue hereof.

       4.5    <u>Reasonable Care</u>. Noteholder shall have no duty with respect to the care and preservation of the Collateral beyond the exercise of reasonable care.

       4.6    <u>Covenants</u>. Borrower shall keep the Collateral in good repair at all times, and free of all liens and claims whatsoever, other than the security interest granted hereunder. Borrower shall not sell, transfer, lease, or otherwise convey any interest in the Collateral except with the prior written consent of Noteholder. Borrower shall keep the Collateral at those locations identified in the Perfection Certificate and the Borrower will not move the Collateral from such locations without providing at least thirty (30) days prior written notice to Noteholder. Borrower shall not, without providing at least thirty (30) days' prior written notice to the Noteholder, change its legal name, identity, type of organization, jurisdiction of organization, corporate structure, location of its principal place of business, or its organizational identification number.

5.    <u>Representations and Warranties</u>. Borrower hereby represents and warrants to Noteholder on the date hereof as follows:

       5.1    <u>Existence; Compliance with Laws</u>. Borrower (a) if an entity, is validly existing and in good standing under the laws of the state of its jurisdiction of organization, (b) has the requisite power and authority, and the legal right, to own, lease, and operate its properties and assets and to conduct its business as it is now being conducted, (c) is in compliance with all Laws and Orders, and (d) is duly qualified, licensed and in good standing in each jurisdiction where qualification or licensing is required by the nature of its business or the character and location of its property, business or customers.

       5.2    <u>Power and Authority</u>. Borrower has the power and authority, and the legal right, to execute and deliver this Agreement and to perform its obligations hereunder.

       5.3    <u>Authorization; Execution and Delivery</u>. The execution and delivery of this Agreement by Borrower and the performance of its obligations hereunder have been duly authorized in accordance with all applicable Laws and (if an entity) its organizational documents. Borrower has duly executed and delivered this Agreement.

       5.4    <u>No Approvals</u>. No consent or authorization of, filing with, notice to, or other act by, or in respect of, any Governmental Authority or any other Person is required in order for Borrower to execute, deliver, or perform any of its obligations under this Agreement.

5.5     No Violations. The execution and delivery of this Agreement and the consummation by Borrower of the transactions contemplated hereby and thereby do not and will not (a) violate any provision of Borrower's organizational documents; (b) violate any Law or Order applicable to Borrower or by which any of its properties or assets may be bound; or (c) constitute a default under any material agreement or contract by which the Borrower may be bound.

5.6     Enforceability. This Agreement is a valid, legal, and binding obligation of Borrower, enforceable against Borrower in accordance with its terms.

5.7     No Litigation. No action, suit, litigation, investigation, or proceeding of, or before, any arbitrator or Governmental Authority is pending or, to the knowledge of Borrower, threatened by or against Borrower or any of its property or assets (a) with respect to the Agreement or any of the transactions contemplated hereby or thereby or (b) that could be expected to materially adversely affect Borrower's financial condition or the ability of Borrower to perform its obligations under the Agreement.

6.      Purpose of Loan.  Borrower acknowledges that the Loan is for commercial or business purposes and not for personal, family, or household purposes.

7.      Affirmative Covenants. Until all amounts outstanding in this Note have been paid in full, Borrower shall:

7.1     Maintenance of Existence. (a) Preserve, renew, and maintain in full force and effect its corporate or organizational existence and (b) take all reasonable action to maintain all rights, permits, privileges, and franchises necessary or desirable in the normal conduct of its business, except, in each case, where the failure to do so would not reasonably be expected to have a Material Adverse Effect.

7.2     Compliance. Comply with (a) all of the terms and provisions of its organizational documents; (b) its obligations under its material contracts and agreements; and (c) all Laws and Orders applicable to it and its business, except where the failure to do so would not reasonably be expected to have a Material Adverse Effect.

7.3     Payment Obligations. Pay, discharge, or otherwise satisfy at or before maturity or before they become delinquent, as the case may be, all its material obligations of whatever nature, except where the amount or validity thereof is currently being contested in good faith by appropriate proceedings, and reserves in conformity with GAAP with respect thereto have been provided on its books.

7.4     Notice of Events of Default. As soon as possible and in any event within two (2) Business Days after it becomes aware that a Default or an Event of Default has occurred, notify Noteholder in writing of the nature and extent of such Default or Event of Default and the action, if any, it has taken or proposes to take with respect to such Default or Event of Default.

7.5     Further Assurances. Upon the request of Noteholder, promptly execute and deliver such further instruments and do or cause to be done such further acts as may be necessary or advisable to carry out the intent and purposes of this Agreement.

7.6     Access to Banking Information. Borrower shall always provide Noteholder with real time, independent access to all of Borrower's bank account information through Decision Logic's Instant Account Verification service or another service or program selected by Noteholder.

23-80004-FPC    Doc 1    Filed 02/28/23    Entered 02/28/23 16:29:23    Pg 24 of 60

8.    <u>Negative Covenants</u>. Until all amounts outstanding under this Note have been paid in full, Borrower shall not:

8.1    <u>Line of Business</u>. Enter into any business, directly or indirectly, except for those businesses in which Borrower is engaged on the date of this Agreement or that are reasonably related thereto.

9.    <u>Events of Default</u>. The occurrence and continuance of any of the following shall constitute an Event of Default hereunder:

9.1    <u>Failure to Pay</u>. Borrower fails to pay (a) any principal amount of the Loan when due or (b) interest or any other amount when due and such failure continues for seven (7) days.

9.2    <u>Breach of Representations and Warranties</u>. Any representation or warranty made or deemed made by Borrower to Noteholder herein is incorrect in any material respect on the date as of which such representation or warranty was made or deemed made.

9.3    <u>Breach of Access to Banking Information Covenant</u>. Borrower fails to comply with Section 7.6 above and such failure continues for two (2) days after notice from the Noteholder.

9.4    <u>Breach of Covenants</u>. Borrower fails to observe or perform (a) any covenant, condition, or agreement contained in this Agreement other than those specified in Sections 9.1 and 9.3 and such failure continues for thirty (30) days.

9.5    <u>Cross-Defaults</u>. Borrower fails to pay when due any of its Debt (other than Debt arising under this Note) or any interest or premium thereon when due (whether by scheduled maturity, acceleration, demand, or otherwise) and such failure continues after the applicable grace or cure period, if any, specified in the agreement or instrument relating to such Debt.

9.6    <u>Bankruptcy</u>.

(a)    Borrower commences any case, proceeding, or other action (i) under any existing or future Law relating to bankruptcy, insolvency, reorganization, or other relief of debtors, seeking to have an order for relief entered with respect to it, or seeking to adjudicate it as bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, winding-up, liquidation, dissolution, composition, or other relief with respect to it or its debts, or (ii) seeking appointment of a receiver, trustee, custodian, conservator, or other similar official for it or for all or any substantial part of its assets, or the Borrower makes a general assignment for the benefit of its creditors;

(b)    there is commenced against Borrower any case, proceeding, or other action of a nature referred to in Section 9.6(a) above which (i) results in the entry of an order for relief or any such adjudication or appointment, or (ii) remains undismissed, undischarged, or unbonded for a period of thirty (30) days;

(c)    there is commenced against Borrower any case, proceeding, or other action seeking issuance of a warrant of attachment, execution, or similar process against all or any substantial part of its assets which results in the entry of an order for any such relief which has not been vacated, discharged, or stayed or bonded pending appeal within thirty (30) days from the entry thereof;

(d)    Borrower takes any action in furtherance of, or indicating its consent to,

approval of, or acquiescence in, any of the acts set forth in Section 9.6(a), Section 9.6(b), or Section 9.6(c) above; or

        (e)      Borrower is generally not, or shall be unable to, or admits in writing its inability to, pay its debts as they become due.

      9.7      <u>Judgments</u>. One or more judgments or decrees shall be entered against the Borrower and all of such judgments or decrees shall not have been vacated, discharged, stayed, or bonded pending appeal within thirty (30) days from the entry thereof.

      9.8      <u>Adverse Change; Insecurity</u>.  (a) A material adverse change occurs in Borrower's financial condition, (b) Noteholder believes the prospect of payment or performance of this Note is impaired, or (iii) Noteholder in good faith believes itself insecure.

      9.9      <u>Death or Incapacity.</u> The death or incapacity of Borrower or any guarantor of the Note if an individual.

10.      <u>Remedies</u>. Upon the occurrence of any Event of Default and at any time thereafter during the continuance of such Event of Default, Noteholder may at its option, by written notice to Borrower (a) declare the entire principal amount of this Note, together with all accrued interest thereon and all other amounts payable hereunder, immediately due and payable; and/or (b) exercise any or all of its rights, powers, or remedies of a secured party under the UCC or other applicable Law, including, without limitation, the right to take possession of, hold, collect, sell, deliver, or dispose of all or any portion of the Collateral; *provided, however* that, if an Event of Default described in Section 9.6 shall occur, the principal of and accrued interest on the Note shall become immediately due and payable without any notice, declaration, or other act on the part of Noteholder. If notice prior to the disposition of Collateral or any portion thereof is necessary under applicable law, written notice mailed to Borrower at its notice address as provided in Section 11.1 hereof ten (10) days prior to the date of disposition shall constitute reasonable notice, but notice given in in any other reasonable manner shall be sufficient.

11.      <u>Miscellaneous</u>.

      11.1      <u>Notices</u>.  All notices, requests, or other communications required or permitted to be delivered hereunder shall be delivered in writing, in each case to the address specified in the Addendum or to such other address as such Party may from time to time specify in writing in compliance with this provision.  Notices shall be deemed to have been given, (i) if mailed by certified or registered mail, three (3) Business Days after mailing, (ii) if sent by hand, upon delivery, (iii) if sent by overnight courier service, on the day scheduled for delivery; (iv) if sent by facsimile during the recipient's normal business hours, on the date sent (and if sent after normal business hours shall be deemed to have been given at the opening of the recipient's business on the next business day); and (v) if sent by e-mail, upon the sender's receipt of an acknowledgment from the intended recipient (such as by the "return receipt requested" function, as available, return e-mail, or other written acknowledgment).

      11.2      <u>Expenses</u>. Borrower shall reimburse Noteholder on demand for all reasonable out-of-pocket costs, expenses, and fees (including reasonable expenses and fees of its external counsel) incurred by Noteholder in connection with the transactions contemplated hereby including the negotiation, documentation, and execution of this Agreement and the enforcement of Noteholder's rights hereunder and thereunder.

      11.3      <u>Governing Law</u>. This Agreement, and any claim, controversy, dispute, or cause of action (whether in contract or tort or otherwise) based upon, arising out of, or relating to this Agreement, and the transactions contemplated hereby shall be governed by the laws of the Commonwealth of Virginia.

11.4    <u>Submission to Jurisdiction</u>.

(a)    Borrower hereby irrevocably and unconditionally (i) agrees that any legal action, suit, or proceeding arising out of or relating to this Agreement may be brought in the courts of the Commonwealth of Virginia or of the United States of America for the Eastern District of Virginia and (ii) submits to the exclusive jurisdiction of any such court in any such action, suit, or proceeding. Final judgment against Borrower in any action, suit, or proceeding shall be conclusive and may be enforced in any other jurisdiction by suit on the judgment.

(b)    Nothing in this Section 11.4 shall affect the right of Noteholder to (i) commence legal proceedings or otherwise sue Borrower in any other court having jurisdiction over Borrower or (ii) serve process upon Borrower in any manner authorized by the laws of any such jurisdiction.

11.5    <u>Venue</u>. Borrower irrevocably and unconditionally waives, to the fullest extent permitted by applicable law, any objection that it may now or hereafter have to the laying of venue of any action or proceeding arising out of or relating to this Agreement in any court referred to in Section 11.4 and the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

11.6    <u>Waiver of Jury Trial</u>. BORROWER HEREBY IRREVOCABLY WAIVES, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY RELATING TO THIS AGREEMENT, OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY WHETHER BASED ON CONTRACT, TORT, OR ANY OTHER THEORY.

11.7    <u>Counterparts; Integration; Effectiveness</u>. This Agreement and any amendments, waivers, consents, or supplements hereto and thereto may be executed in counterparts, each of which shall constitute an original, but all taken together shall constitute a single contract. This Agreement constitute the entire contract between the Parties with respect to the subject matter hereof and supersede all previous agreements and understandings, oral or written, with respect thereto. Delivery of an executed counterpart of a signature page to this Agreement by facsimile or in electronic (i.e., "pdf" or "tif") format shall be effective as delivery of a manually executed counterpart of this Agreement, as applicable.

11.8    <u>Successors and Assigns</u>. This Note may be assigned or transferred by Noteholder to any Person. Borrower may not assign or transfer this Note or any of its rights hereunder without the prior written consent of Noteholder. This Note shall inure to the benefit of, and be binding upon, the Parties and their successors permitted assigns.

11.9    <u>Waiver of Notice</u>. Borrower hereby waives demand for payment, presentment for payment, protest, notice of payment, notice of dishonor, notice of nonpayment, notice of acceleration of maturity, and diligence in taking any action to collect sums owing hereunder.

11.10    <u>Interpretation</u>. For purposes of this Note (a) the words "include," "includes," and "including" shall be deemed to be followed by the words "without limitation"; (b) the word "or" is not exclusive; and (c) the words "herein," "hereof," "hereby," "hereto," and "hereunder" refer to this Agreement as a whole. The definitions given for any defined terms in this Agreement shall apply equally to both the singular and plural forms of the terms defined. Whenever the context may require, any pronoun shall include the corresponding masculine, feminine, and neuter forms. Unless the context otherwise requires, references herein: (x) to Schedules, Exhibits, and Sections mean the Schedules, Exhibits, and Sections of this Note; (y) to an agreement, instrument, or other document means such agreement, instrument, or other document as amended, supplemented, and modified from time to time to the extent

permitted by the provisions thereof; and (z) to a statute means such statute as amended from time to time and includes any successor legislation thereto and any regulations promulgated thereunder. This Note shall be construed without regard to any presumption or rule requiring construction or interpretation against the party drafting an instrument or causing any instrument to be drafted.

11.11    Amendments and Waivers. No term of this Agreement may be waived, modified, or amended except by an instrument in writing signed by both of the parties hereto. Any waiver of the terms hereof shall be effective only in the specific instance and for the specific purpose given.

11.12    Headings. The headings of the various Sections and subsections herein are for reference only and shall not define, modify, expand, or limit any of the terms or provisions hereof.

11.13    No Waiver; Cumulative Remedies. No failure to exercise and no delay in exercising on the part of the Noteholder, of any right, remedy, power, or privilege hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power, or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power, or privilege. The rights, remedies, powers, and privileges herein provided are cumulative and not exclusive of any rights, remedies, powers, and privileges provided by law.

11.14    Electronic Execution. The words "execution," "signed," "signature," and words of similar import in the Note shall be deemed to include electronic or digital signatures or the keeping of records in electronic form, each of which shall be of the same effect, validity, and enforceability as manually executed signatures or a paper-based recordkeeping system, as the case may be, to the extent and as provided for under applicable law, including the Electronic Signatures in Global and National Commerce Act of 2000 (15 USC § 7001 et seq.) or any other similar state laws based on the Uniform Electronic Transactions Act.

11.15    Severability. If any term or provision of this Agreement is invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction.

*[SIGNATURE PAGE FOLLOWS]*

IN WITNESS WHEREOF, Borrower has executed this Agreement as of the day and year first written above.

BORROWER:

Sarah E. Cernik d/b/a Sarah E. Cernik, RN
_____
[Name of Borrower]

By: _____

Name: _____ Sarah Cernik _____

Title: _____ RN _____

Date: _____ 11/08/2021 _____

CO- BORROWER:

_____
[Name of Co-Borrower]

By: _____

Name: _____

Title: _____

Date: _____

23-80004-FPC    Doc 1    Filed 02/28/23    Entered 02/28/23 16:29:23    Pg 29 of 60

**ADDENDUM A TO THE PROMISSORY NOTE AND SECURITY AGREEMENT**

| NAME AND ADDRESS OF NOTEHOLDER | NAME AND ADDRESS OF GUARANTOR(S) | NAME AND ADDRESS OF BORROWER/CO-BORROWER |
|---|---|---|
| 4551 Cox Road, Suite 402<br>Attn: ABL Alliance, LLLP<br>*E-mail: support@hippolending.com*<br>Glen Allen, VA 23060<br>Telephone: (804) 729 3000 | Guarantor #1<br>Sarah E. Cernik<br><br>611 S. Arties Lane<br><br>Spokane Valley, WA 99016 | Borrower<br>Sarah E. Cernik d/b/a Sarah E. Cernik, RN<br><br>611 S. Arties Lane<br><br>Spokane Valley, WA 99016 |
| | Guarantor #2 | Co-Borrower |

| | |
|---|---|
| **Principal Amount:** | $ 105,257.34 |
| **Term:** | 120 months |
| **Total Sum of Payments (Loan Amount):** | $ 219,441.70 |

| MONTHLY PAYMENT(S) | IN THE AMOUNT OF | BEGINNING ON |
|---|---|---|
| 120 | $ 1,828.68 | 01/07/2022 |

This Addendum is hereby made a part of the Promissory Note and Security Agreement made by Borrower and payable to Noteholder (the "Agreement") and provides as follows:

**Closing Fee**. Borrower agrees to pay a closing fee of $ 2,500.00 which shall be (i) due and payable at the closing of the Loan and (ii) included in the Loan Amount and paid to Noteholder from the proceeds of the Loan for processing and administering of such closing.

ALL OTHER TERMS AND CONDITIONS OF THE AGREEMENT REMAIN IN FULL FORCE AND EFFECT.

Borrower Name:                                             Co-Borrower Name:

Sarah E. Cernik d/b/a Sarah E. Cernik, RN                 _____

By: _____                              By: _____

Name: ___Sarah Cernik___                                 Name: _____

Title: ___RN___                                          Title: _____

EIN/Social Security Number:                               EIN/Social Security Number:

_____██████████_____                               _____

Date: ___11/08/2021___                                   Date: _____

| ABL Alliance, LLLP<br>4551 Cox Road, Suite 402<br>Glen Allen, VA 23060 | Sarah E. Cernik d/b/a Sarah E. Cernik, RN<br><br>611 S. Arties Lane<br><br>Spokane Valley, WA 99016 |
|---|---|
| COMPLETE NAME AND ADDRESS OF CREDITOR | COMPLETE NAME AND ADDRESS OF BORROWER |

### ACCOUNT AUTHORIZATION AGREEMENT

BANK NAME: _____Chase_____

ACCOUNT NUMBER: ██████3343_____ TRANSIT/ABA NUMBER: ██████ 716_____
(9 DIGITS - LOWER LEFT CORNER OF CHECK)

The account listed above is used for business transactions. I authorize you to send funds via ACH for my commercial loan to that account. I also authorize my monthly drafts to come out of this account.

In accordance with the commercial financing provided by Hippo Lending (the "Loan"), all the payments due as set forth in Borrower's payment schedule shall be made in the form an ACH transfer directly from the account listed above. All necessary information is referenced below. Under the operating rules of the NACHA which are applicable to ACH transactions involving Borrower's account, Hippo Lending (or assigns) is not required to give next day notice to Borrower of receipt of an ACH item and Hippo Lending will not do so.

All ACH transactions to the account must comply with applicable U.S. law. This form must be accompanied by either 1) a picture of a voided check or 2) a screenshot of an on line banking portal, which demonstrates the Borrower's ownership of the listed account (The screenshot must have the Borrower's name, account number, and ABA/routing number).

Borrower hereby authorizes Hippo Lending and/or its agents or assigns to initiate, on or about the date each month on which payment is due, DEBIT entries and/or correction entries to Borrower's checking account at the DEPOSITORY identified above and evidenced by the enclosed VOIDED check below. This authorization shall remain in full force and effect until all sums due to Hippo Lending have been paid in full. This Agreement may not be terminated by Borrower unless Borrower provides Hippo Lending and DEPOSITORY written notice of termination and a reasonable time and opportunity to act on the notice of termination prior to the effective date of termination. Borrower acknowledges that its withdrawal or termination of this authority without the express written consent of Hippo Lending and/or its assigns shall constitute a default under the Loan financing agreements with Hippo Lending.

**A FACSILIMILE OF THIS AGREEMENT WITH SIGNATURE SHALL BE CONSIDERED TO BE AN ORIGINAL.**

███████████          _____          11/08/2021_____
SSN/EIN                        Borrower                                Date

23-80004-FPC    Doc 1    Filed 02/28/23    Entered 02/28/23 16:29:23    Pg 31 of 60

**Please Email or Fax a copy of your VOIDED Check and Driver's License.**

**Fax: 804.897.1202**

**Support@Hippolending.com**

**Statement of Commercial Purpose**

       *Whereas*, <u>Sarah E. Cernik d/b/a Sarah E. Cernik, RN</u>
(the "Borrower ", whether one or more) seeks to obtain a commercial loan ("Commercial Loan") from ABL Alliance, LLLP ("Lender"); and

       *Whereas*, the Borrower understands and acknowledges that the Commercial Loan is a loan that is **not** for personal, family, or household purposes; and

       *Whereas*, Lender offers Commercial Loans, but not loans for personal, family, or household purposes, as these loans are subject to certain legal obligations Lender does not want to undertake; and

       *Whereas*, the Borrower understands and acknowledges that Lender will make a loan to the Borrower only if such loan is treated as a Commercial Loan based on the commercial or business purpose for which the loan proceeds will be used; and

       *Whereas*, by executing this Statement of Commercial Purpose, the Borrower represents to Lender that the Borrower will use the Commercial Loan for commercial or business purposes.

       *Now, therefore*, in order to induce Lender to make a Commercial Loan to the Borrower, the Borrower: (i) represents and warrants that the proceeds of the Commercial Loan will be used for commercial or business purposes and **not** for personal, family, or household purposes; (ii) understands and acknowledges that Lender has reasonably and justifiably relied on this Statement of Commercial Purpose in considering this Commercial Loan for approval and funding; and (iii) agrees to indemnify and hold harmless Lender and any of its successors and assigns from any and all claims, damages, costs, expenses, or liability whatsoever based on the Borrower's breach of the representations and warranties set forth herein.

Borrower Name:

    Sarah Cernik
_____

By: _____

Name: <u>Sarah E. Cernik d/b/a Sarah E. Cernik, RN</u>

Title: _____<u>RN</u>_____

EIN/Social Security Number:

_____██████████_____

Date: _____11/08/2021_____

Co-Borrower Name:

_____

By: _____

Name: _____

Title: _____

EIN/Social Security Number:

_____

Date: _____

23-80004-FPC    Doc 1    Filed 02/28/23    Entered 02/28/23 16:29:23    Pg 33 of 60

# GUARANTY

This GUARANTY (this "**Guaranty**"), dated 11/08/2021_____, is made by _____ _____ Sarah E. Cernik_____, whose address is_611 S. Arties Lane_____, Spokane Valley, WA 99016 _____ ("**Guarantor**"), in favor and for the benefit of ABL Alliance, LLLP, a Virginia corporation with a business address located at 4551 Cox Road, Suite 402, Glen Allen, Virginia 23060 ("**Beneficiary**").

Reference is made to the Promissory Note and Security Agreement dated 11/08/2021 (the "**Note**"), by and between Sarah E. Cernik d/b/a Sarah E. Cernik, RN _____ (whether one or more, "**Borrower**") and Beneficiary. In consideration of the substantial direct and indirect benefits derived by Guarantor from the loan made under the Note, and in order to induce Beneficiary to make the loan and engage in transactions with the Borrower, Guarantor hereby agrees as follows:

1. <u>Guaranty</u>. Guarantor absolutely, unconditionally and irrevocably guarantees to Beneficiary the full and punctual payment and performance of all present and future obligations, liabilities, covenants and agreements required to be observed and performed or paid or reimbursed by Borrower under or relating to the Note, plus all costs, expenses and fees (including the reasonable fees and expenses of Beneficiary's counsel) in any way relating to the enforcement or protection of Beneficiary's rights hereunder (collectively, the "**Obligations**").

2. <u>Guaranty Absolute and Unconditional</u>. Guarantor agrees that its Obligations under this Guaranty are irrevocable, continuing, absolute and unconditional and shall not be discharged or impaired or otherwise affected by, and Guarantor hereby irrevocably waives any defenses to enforcement it may have (now or in the future) by reason of:

(a) Any illegality, invalidity or unenforceability of any Obligation or the Note or any related agreement or instrument, or any law, regulation, decree or order of any jurisdiction or any other event affecting any term of the Obligations.

(b) Any change in the time, place or manner of payment or performance of, or in any other term of the Obligations, or any rescission, waiver, release, assignment, amendment or other modification of the Note.

(c) Any taking, exchange, substitution, release, impairment, amendment, waiver, modification or non-perfection of any collateral or any other guaranty for the Obligations, or any manner of sale, disposition or application of proceeds of any collateral or other assets to all or part of the Obligations.

(d) Any default, failure or delay, willful or otherwise, in the performance of the Obligations.

(e) Any change, restructuring or termination of the corporate structure, ownership or existence of Guarantor or Borrower or any insolvency, bankruptcy, reorganization or other similar proceeding affecting Borrower or its assets or any resulting restructuring, release or discharge of any Obligations.

(f) Any failure of Beneficiary to disclose to Guarantor any information relating to the business, condition (financial or otherwise), operations, performance, properties or prospects of

Borrower now or hereafter known to Beneficiary, Guarantor waiving any duty of Beneficiary to disclose such information.

(g)     The failure of any other guarantor or third party to execute or deliver this Guaranty or any other guaranty or agreement, or the release or reduction of liability of Guarantor or any other guarantor or surety with respect to the Obligations.

(h)     The failure of Beneficiary to assert any claim or demand or to exercise or enforce any right or remedy under the provisions of the Note or otherwise.

(i)     The existence of any claim, set-off, counterclaim, recoupment or other rights that Guarantor or Borrower may have against Beneficiary (other than a defense of payment or performance).

(j)     Any other circumstance (including, without limitation, any statute of limitations), act, omission or manner of administering the Note or any existence of or reliance on any representation by Beneficiary that might vary the risk of Guarantor or otherwise operate as a defense available to, or a legal or equitable discharge of, Guarantor.

3.     Certain Waivers; Acknowledgments. Guarantor further acknowledges and agrees as follows:

(a)     Guarantor hereby unconditionally and irrevocably waives any right to revoke this Guaranty and acknowledges that this Guaranty is continuing in nature and applies to all presently existing and future Obligations, until the complete, irrevocable and indefeasible payment and satisfaction in full of the Obligations.

(b)     This Guaranty is a guaranty of payment and performance and not of collection. Beneficiary shall not be obligated to enforce or exhaust its remedies against Borrower or under the Note before proceeding to enforce this Guaranty.

(c)     This Guaranty is a direct guaranty and independent of the obligations of Borrower under the Note. Beneficiary may resort to Guarantor for payment and performance of the Obligations whether or not Beneficiary shall have resorted to any collateral therefor or shall have proceeded against Borrower or any other guarantors with respect to the Obligations. Beneficiary may, at Beneficiary's option, proceed against Guarantor and Borrower, jointly and severally, or against Guarantor only without having obtained a judgment against Borrower.

(d)     Guarantor hereby unconditionally and irrevocably waives promptness, diligence, notice of acceptance, presentment, demand for performance, notice of non- performance, default, acceleration, protest or dishonor and any other notice with respect to any of the Obligations and this Guaranty and any requirement that Beneficiary protect, secure, perfect or insure any lien or any property subject thereto.

(e)     Guarantor unconditionally, absolutely and irrevocably waives each and every defense which under principles of guaranty or suretyship law would otherwise operate to impair or diminish the liability of Guarantor for the Obligations, including, without limitation, the provisions of §§ 49-25 and 49-26 of the Code of Virginia (1950), as amended.

(f)     Guarantor agrees that its guaranty hereunder shall continue to be effective or be

reinstated, as the case may be, if at any time all or part of any payment of any Obligation is voided, rescinded or recovered or must otherwise be returned by Beneficiary upon the insolvency, bankruptcy or reorganization of Borrower.

4.    Subrogation. Guarantor waives and shall not exercise any rights that it may acquire by way of subrogation, contribution, reimbursement or indemnification for payments made under this Guaranty until all Obligations shall have been indefeasibly paid and discharged in full.

5.    Representations and Warranties. To induce Beneficiary to make the loan and enter into the transactions under the Note, Guarantor represents and warrants that: (a) this Guaranty constitutes Guarantor's valid and legally binding agreement in accordance with its terms; (b) the execution, delivery and performance of this Guaranty have been duly authorized by all necessary action and will not violate any order, judgment or decree to which Guarantor or any of its assets may be subject; and (c) Guarantor is currently solvent and will not be rendered insolvent by providing this Guaranty.

6.    Notices. All notices, requests, consents, demands and other communications hereunder (each, a "**Notice**") shall be in writing and delivered (a) if to Beneficiary, at ABL Alliance, LLLP, 4551 Cox Road, Suite 402, Glen Allen, VA 23060, Attn: Hippo Lending, Telephone: (804) 897-1200, *E-mail: support@hippolending.com* and (b) to Guarantor at the address set forth on the signature page hereof or to such other address as may be designated by the receiving party in a Notice given in accordance with this section.  Notices shall be deemed to have been given, (i) if mailed by certified or registered mail, three (3) Business Days after mailing, (ii) if sent by hand, upon delivery, (iii) if sent by overnight courier service, on the day scheduled for delivery; (iv) if sent by facsimile during the recipient's normal business hours, on the date sent (and if sent after normal business hours shall be deemed to have been given at the opening of the recipient's business on the next business day); and (v) if sent by e-mail, upon the sender's receipt of an acknowledgment from the intended recipient (such as by the "return receipt requested" function, as available, return e-mail, or other written acknowledgment).

7.    Assignment. This Guaranty shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns; provided, however, that Guarantor may not, without the prior written consent of Beneficiary, assign any of its rights, powers or obligations hereunder. Any attempted assignment in violation of this section shall be null and void.

8.    Governing Law; Service of Process. THIS GUARANTY SHALL BE GOVERNED BY AND CONSTRUED UNDER THE LAWS OF THE COMMONWEALTH OF VIRGINIA, WITHOUT REFERENCE TO ANY CHOICE OF LAW DOCTRINE. EACH PARTY IRREVOCABLY CONSENTS TO SERVICE OF PROCESS IN THE MANNER PROVIDED FOR NOTICES IN SECTION 6 HEREOF AND AGREES THAT NOTHING HEREIN SHALL AFFECT THE RIGHT OF ANY PARTY HERETO TO SERVE PROCESS IN ANY MANNER PERMITTED BY APPLICABLE LAW.

9.    Waiver of Jury Trial. EACH PARTY HEREBY IRREVOCABLY WAIVES ALL RIGHTS TO TRIAL BY JURY WITH RESPECT TO ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS GUARANTY OR ANY OF THE OBLIGATIONS HEREUNDER.

10.   Cumulative Rights. Each right, remedy and power hereby granted to Beneficiary or allowed it by applicable law or other agreement shall be cumulative and not exclusive of any other, and may be exercised by Beneficiary at any time or from time to time.

11.   Severability. If any provision of this Guaranty is to any extent determined by final decision of a court of competent jurisdiction to be unenforceable, the remainder of this Guaranty shall not be affected

thereby, and each provision of this Guaranty shall be valid and enforceable to the extent permitted by law.

      12.     <u>Entire Agreement; Amendments; Headings; Effectiveness</u>. This Guaranty constitutes the sole and entire agreement of Guarantor and Beneficiary with respect to the subject matter hereof and supersedes all previous agreements or understandings, oral or written, with respect to such subject matter. No amendment or waiver of any provision of this Guaranty shall be valid and binding unless it is in writing and signed, in the case of an amendment, by both parties, or in the case of a waiver, by the party against which the waiver is to be effective. Section headings are for convenience of reference only and shall not define, modify, expand or limit any of the terms of this Guaranty. Delivery of this Guaranty by facsimile or in electronic (i.e., pdf or tif) format shall be effective as delivery of a manually executed original of this Guaranty.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, Guarantor has executed this Guaranty as of the day and year first above written.

GUARANTOR #1:

_(signature)_

_____
(Guarantor's Signature)

Sarah E. Cernik
_____
(Print Name)

Date: _____11/08/2021_____

Address for Notice:

611 S. Arties Lane
_____

Spokane Valley, WA 99016
_____

Attn: _____Sarah Cernik_____

Telephone: ██████████████

E-mail: ___Libertygirl9@gmail.com___



P.O. Box 15284
Wilmington, DE 19850

**Customer service information**

📱 Customer service: 1.800.432.1000

En Español: 1.800.688.6086

bankofamerica.com

✉ Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

SARAH CERNIK
JOSEPH CERNIK
611 S ARTIES LN
SPOKANE VLY, WA 99016-7754

🔔 | Please see the **Important Messages - Please Read** section of your statement for important details that could impact you.

# Your combined statement

for November 11, 2021 to December 15, 2021

| Your deposit accounts | Account/plan number | Ending balance | Details on |
|---|---|---|---|
| Adv Plus Banking | ████ 3343 | $3,182.85 | Page 3 |
| Regular Savings | ████ 3356 | $83.35 | Page 9 |
| **Total balance** | | **$3,266.20** | |



## Introducing security you can see

Our new security meter lets you visualize your account security and moves up as you take additional steps to help protect your account.

Visit the Security Center in the Mobile Banking app or Online Banking to see your security level today. To learn more, scan this code or visit **bofa.com/SecurityCenter**.



Mobile Banking requires that you download the Mobile Banking app and is only available for select mobile devices. Message and data rates may apply.

SSM-07-21-0033.B | 3647905

# IMPORTANT INFORMATION:
## BANK DEPOSIT ACCOUNTS

How to Contact Us - You may call us at the telephone number listed on the front of this statement.

Updating your contact information - We encourage you to keep your contact information up-to-date. This includes address, email and phone number. If your information has changed, the easiest way to update it is by visiting the Help & Support tab of Online Banking.

Deposit agreement - When you opened your account, you received a deposit agreement and fee schedule and agreed that your account would be governed by the terms of these documents, as we may amend them from time to time. These documents are part of the contract for your deposit account and govern all transactions relating to your account, including all deposits and withdrawals. Copies of both the deposit agreement and fee schedule which contain the current version of the terms and conditions of your account relationship may be obtained at our financial centers.

Electronic transfers: In case of errors or questions about your electronic transfers - If you think your statement or receipt is wrong or you need more information about an electronic transfer (e.g., ATM transactions, direct deposits or withdrawals, point-of-sale transactions) on the statement or receipt, telephone or write us at the address and number listed on the front of this statement as soon as you can. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number.
- Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

For consumer accounts used primarily for personal, family or household purposes, we will investigate your complaint and will correct any error promptly. If we take more than 10 business days (10 calendar days if you are a Massachusetts customer) (20 business days if you are a new customer, for electronic transfers occurring during the first 30 days after the first deposit is made to your account) to do this, we will provisionally credit your account for the amount you think is in error, so that you will have use of the money during the time it will take to complete our investigation.

For other accounts, we investigate, and if we find we have made an error, we credit your account at the conclusion of our investigation.

Reporting other problems - You must examine your statement carefully and promptly. You are in the best position to discover errors and unauthorized transactions on your account. If you fail to notify us in writing of suspected problems or an unauthorized transaction within the time period specified in the deposit agreement (which periods are no more than 60 days after we make the statement available to you and in some cases are 30 days or less), we are not liable to you and you agree to not make a claim against us, for the problems or unauthorized transactions.

Direct deposits - If you have arranged to have direct deposits made to your account at least once every 60 days from the same person or company, you may call us to find out if the deposit was made as scheduled. You may also review your activity online or visit a financial center for information.

© 2021 Bank of America Corporation



**Bank of America, N.A. Member FDIC and** **Equal Housing Lender**


# Your Adv Plus Banking

**SARAH CERNIK    JOSEPH CERNIK**

## Account summary

| | |
|---|---:|
| Beginning balance on November 11, 2021 | $103,041.33 |
| Deposits and other additions | 46,861.64 |
| Withdrawals and other subtractions | -145,955.12 |
| Checks | -0.00 |
| Service fees | -765.00 |
| **Ending balance on December 15, 2021** | **$3,182.85** |

## Deposits and other additions

| Date | Description | Amount |
|---|---|---:|
| 11/12/21 | KING SOFT WATER  DES:PAYROLL    ID:CERNIK  INDN:JOSEPH CERNIK        CO ID:XXXXXXXXX PPD | 628.77 |
| 11/12/21 | KING SOFT WATER  DES:PAYROLL    ID:CERNIK-ID  INDN:JOSEPH A CERNIK        CO ID:XXXXXXXXX  PPD | 112.44 |
| 11/12/21 | Cash App*Cash  11/12 #000507083 PMNT RCVD Cash App*Cash Out  Visa Direct  CA | 74.25 |
| 11/15/21 | IRS  TREAS 310  DES:  CHILDCTC ID:XXXXXXXXXX00989  INDN:CERNIK, SARAH E & JOSE  CO ID:9111736959 PPD | 300.00 |
| 11/15/21 | VENMO        DES:CASHOUT   ID:1016782329579  INDN:JOSEPH CERNIK        CO ID:5264681992 PPD | 50.00 |
| 11/23/21 | PAID LEAVE WA  DES:BENEFITS   ID:5645439904BFL  INDN:Joseph Cernik        CO ID:9916001099 PPD | 334.00 |
| 11/26/21 | Online Banking transfer from SAV 3356 Confirmation# 2296881641 | 10,000.00 |

*continued on the next page*



## Invest your way with Merrill

Get a range of personalized tools, expertise and advice to help you pursue your investing goals.

Get started at **merrilledge.com/InvestYourWay**.

Merrill Lynch, Pierce, Fenner & Smith Incorporated (also referred to as "MLPF&S" or "Merrill") makes available certain investment products sponsored, managed, distributed or provided by companies that are affiliates of Bank of America Corporation ("BofA Corp."). MLPF&S is a registered broker-dealer, Member SIPC and a wholly owned subsidiary of BofA Corp. Banking products are provided by Bank of America, N.A., and affiliated banks, Members FDIC and wholly owned subsidiaries of BofA Corp.

Investment products:

| Are Not FDIC Insured | Are Not Bank Guaranteed | May Lose Value |
|---|---|---|

SSM-09-21-0053.B | 3713969

## Deposits and other additions - continued

| Date | Description | Amount |
|---|---|---|
| 11/26/21 | KING SOFT WATER  DES:PAYROLL   ID:CERNIK  INDN:JOSEPH CERNIK           CO ID:XXXXXXXX PPD | 3,039.53 |
| 11/26/21 | KING SOFT WATER  DES:PAYROLL    ID:CERNIK-ID  INDN:JOSEPH A CERNIK        CO ID:XXXXXXXX  PPD | 112.44 |
| 11/29/21 | Online Banking transfer from SAV 3356 Confirmation# 2312317101 | 10,000.00 |
| 11/29/21 | Online Banking transfer from SAV 3356 Confirmation# 2420930685 | 10,000.00 |
| 12/06/21 | Online Banking transfer from SAV 3356 Confirmation# 6581804234 | 2,000.00 |
| 12/06/21 | VENMO         DES:CASHOUT   ID:1017190923466  INDN:SARAH CERNIK          CO ID:5264681992 PPD | 20.00 |
| 12/10/21 | KING SOFT WATER  DES:PAYROLL    ID:CERNIK  INDN:JOSEPH CERNIK           CO ID:XXXXXXXX PPD | 1,150.21 |
| 12/10/21 | KING SOFT WATER  DES:PAYROLL    ID:CERNIK-ID  INDN:JOSEPH A CERNIK        CO ID:XXXXXXXX  PPD | 213.06 |
| 12/13/21 | Online Banking transfer from SAV 3356 Confirmation# 3132402722 | 3,400.00 |
| 12/13/21 | PAYPAL       DES:TRANSFER  ID:1017346574127  INDN:JOSEPH CERNIK         CO ID:PAYPALSD11 PPD | 141.94 |
| 12/14/21 | Transfer PAYPAL | 4,985.00 |
| 12/15/21 | IRS  TREAS 310  DES:  CHILDCTC ID:XXXXXXXXXX00989  INDN:CERNIK, SARAH E & JOSE  CO ID:9111736959 PPD | 300.00 |
| **Total deposits and other additions** | | **$46,861.64** |

## Withdrawals and other subtractions

| Date | Description | Amount |
|---|---|---|
| 11/12/21 | PMNT SENT 1110 COINBASE https://www.fCA 24116411315400773167053 | -2,000.00 |
| 11/12/21 | COSTCO GAS #12  11/11 #000629337 PURCHASE COSTCO GAS #1298   SPOKANE          WA | -47.25 |
| 11/12/21 | Zelle Transfer Conf# s08fdshm3; Sarah Cernik | -3,500.00 |
| 11/12/21 | Online Banking transfer to SAV 3356 Confirmation# 2275683832 | -40,000.00 |
| 11/12/21 | COSTCO GAS #06  11/12 #000464802 PURCHASE COSTCO GAS #0670   SPOKANE          WA | -51.49 |
| 11/12/21 | CAPITAL ONE        DES:ONLINE PMT ID:3GYLZ96XS1OK3ZR  INDN:JOSEPH CERNIK          CO ID:9279744991 WEB | -13,895.00 |
| 11/12/21 | SEEDFI         DES:PREAUTHPMT ID:  INDN:SARAH CERNIK          CO ID:1833918946 WEB | -5,681.28 |
| 11/12/21 | KOHL'S         DES:CHG PMT  ID:043000099592022  INDN:CERNIK SARAH          CO ID:9044030146 WEB | -2,070.20 |
| 11/12/21 | CAPITAL ONE        DES:MOBILE PMT ID:3GY6BXUDJPT8N5F  INDN:SARAH CERNIK          CO ID:9279744980 WEB | -1,300.00 |
| 11/12/21 | CAPITAL ONE AUTO DES:CARPAY     ID:006206359883853 INDN:JOSEPH CERNIK          CO ID:9541719806 WEB | -665.67 |
| 11/12/21 | CAPITAL ONE AUTO DES:CARPAY     ID:006207348632952 INDN:SARAH E CERNIK          CO ID:9541719806 WEB | -421.80 |
| 11/12/21 | Synchrony Bank  DES:CC PMT    ID:650159005950126  INDN:JOSEPH A CERNIK          CO ID:9856794001 WEB | -350.00 |

*continued on the next page*

## Withdrawals and other subtractions - continued

| Date | Description | Amount |
|------|-------------|--------|
| 11/12/21 | KEEP THE CHANGE TRANSFER TO ACCT 3356 FOR 11/12/21 | -1.26 |
| 11/15/21 | Synchrony Bank DES:CC PYMT ID:650172584308938 INDN:JOSEPH A CERNIK CO ID:9856794001 WEB | -3,555.13 |
| 11/15/21 | TALLY TECH DES:TALLY ID: INDN:Sarah Cernik CO ID:2473932324 WEB | -185.15 |
| 11/15/21 | Synchrony Bank DES:CC PYMT ID:601918362224892 INDN:JOSEPH CERNIK CO ID:9856794001 WEB | -140.00 |
| 11/16/21 | CHECKCARD 1115 PHONTIP STYLE THAI REST SPOKANE WA 24055231320091481000112 | -22.02 |
| 11/16/21 | KEEP THE CHANGE TRANSFER TO ACCT 3356 FOR 11/16/21 | -0.98 |
| 11/17/21 | VERIZON WIRELESS DES:PAYMENTS ID:047115106200001 INDN:0000000047115106200001 CO ID:4223344794 PPD | -275.20 |
| 11/18/21 | Zelle Transfer Conf# v179vvj81; SARAH CERNIK | -1,000.00 |
| 11/18/21 | AMERICAN EXPRESS DES:ACH PMT ID:W3192 INDN:Sarah Cernik CO ID:1133133497 WEB | -833.19 |
| 11/18/21 | CAPITAL ONE AUTO DES:CARPAY ID:006206359883853 INDN:JOSEPH CERNIK CO ID:9541719806 WEB | -665.67 |
| 11/18/21 | UPSTART NETWORK DES:UPSTART FU ID:1341999 INDN:JOSEPH CERNIK CO ID:45466061BG WEB PMT INFO:FM 20495308 BORROWER_PAYMT | -200.13 |
| 11/19/21 | CHECKCARD 1118 BUFFALO ARMS CO PONDERAY ID 24428061323001562557961 | -67.73 |
| 11/19/21 | PMNT SENT 1118 COINBASE https://www.fCA 24116411323400771689835 | -2,500.00 |
| 11/19/21 | Zelle Transfer Conf# vee2xtmu8; SARAH CERNIK | -2,000.00 |
| 11/19/21 | UPSTART NETWORK DES:UPST LOANS ID:147531 INDN:SARAH CERNIK CO ID:2454660612 WEB PMT INFO:FM 20596776 BORROWER_PAYMT | -273.85 |
| 11/19/21 | KEEP THE CHANGE TRANSFER TO ACCT 3356 FOR 11/19/21 | -0.27 |
| 11/22/21 | CHECKCARD 1119 RICHARD SIMMONS STRIPE.COM WA 24492151323637814336983 RECURRING | -31.70 |
| 11/22/21 | Zelle Transfer Conf# xou4dsw7x; SARAH CERNIK | -2,000.00 |
| 11/22/21 | PMNT SENT 1120 COINBASE https://www.fCA 24116411325400772523221 | -2,000.00 |
| 11/22/21 | PURCHASE 1120 COINBASE, INC. 8325639309 DE | -1,000.00 |
| 11/22/21 | NAVIENT-FDR DES:AUTOPAY ID:BR Sarah Cernik INDN:5029350483526450 CO ID:2541843973 PPD | -71.00 |
| 11/22/21 | BEST BUY DES:AUTO PYMT ID:720570138440122 INDN:SARAH CERNIK CO ID:CITIAUTFDR WEB | -63.00 |
| 11/22/21 | CAPITAL ONE DES:CRCARDPMT ID:3H0278S8M9FM49A INDN:SARAH CERNIK CO ID:9541719318 WEB | -29.00 |
| 11/22/21 | KEEP THE CHANGE TRANSFER TO ACCT 3356 FOR 11/22/21 | -0.30 |
| 11/23/21 | GasBuddy DES:GasBuddy ID: IJPEO644M INDN:SARAH CERNIK CO ID:1462016638 WEB | -61.61 |

*continued on the next page*

## Withdrawals and other subtractions - continued

| Date | Description | Amount |
|---|---|---|
| 11/23/21 | GasBuddy     DES:GasBuddy  ID:   IYWNZYAX4 INDN:SARAH CERNIK      CO ID:1462016638 WEB | -53.94 |
| 11/24/21 | CHECKCARD 1123 APPLE.COM/BILL 866-712-7753 CA 24692161327100044523519 RECURRING | -2.99 |
| 11/24/21 | TD BANK, NA    DES:WEB PMT    ID:006101031432898 INDN:CERNIK,JOSEPH A     6 CO ID:1010137770 WEB | -600.00 |
| 11/24/21 | FIDELITY     DES:FPRS      ID:65642 XXXXX6112 INDN:SARAH CERNIK      CO ID:9000163002 PPD | -122.90 |
| 11/24/21 | KEEP THE CHANGE TRANSFER TO ACCT 3356 FOR 11/24/21 | -0.01 |
| 11/26/21 | Zelle Transfer Conf# idpjatufw; SARAH CERNIK | -3,000.00 |
| 11/26/21 | AMERICAN EXPRESS DES:ACH PMT    ID:M8930 INDN:Sarah Cernik      CO ID:1133133497 WEB | -1,000.00 |
| 11/29/21 | PMNT SENT  1126 COINBASE https://www.fCA 24116411331400778742173 | -1,600.00 |
| 11/29/21 | PMNT SENT  1126 COINBASE https://www.fCA 24116411331400778762320 | -2,000.00 |
| 11/29/21 | PURCHASE   1126 COINBASE, INC. 8325639309   DE | -849.00 |
| 11/29/21 | CHECKCARD  1126 MOONPAY 5486 MALTA        74697691331910025702845 | -5,000.00 |
| 11/29/21 | CHECKCARD  1126 MOONPAY 8575 MALTA        74697691331910049293458 | -3,500.00 |
| 11/29/21 | PMNT SENT  1126 COINBASE https://www.fCA 24116411331400779194408 | -3,900.00 |
| 11/29/21 | CHECKCARD  1127 www paybis com INTERNET      24021211331052987788857 | -3,000.00 |
| 11/29/21 | CHECKCARD  1127 TESORO #62161 MOSCOW        ID | -55.99 |
| 11/29/21 | CHECKCARD  1127 APPLE.COM/BILL 866-712-7753 CA 24692161331100301557048 | -66.92 |
| 11/29/21 | CHECKCARD  1128 MOONPAY 7534 MALTA        74697691333910014287178 | -8,000.00 |
| 11/29/21 | UPSTART NETWORK  DES:UPST LOANS ID:147531 INDN:SARAH CERNIK       CO ID:2454660612 WEB  PMT INFO:FM 20952832 BORROWER_PAYMT | -273.85 |
| 11/29/21 | GasBuddy     DES:GasBuddy  ID:   I5JE4BY2J INDN:SARAH CERNIK      CO ID:1462016638 WEB | -26.32 |
| 11/29/21 | KEEP THE CHANGE TRANSFER TO ACCT 3356 FOR 11/29/21 | -0.09 |
| 11/30/21 | PMNT SENT  1129 COINBASE https://www.fCA 24116411334400771321626 | -1,092.00 |
| 11/30/21 | CHECKCARD  1129 MOONPAY 9239 MALTA        74697691334910018267704 | -6,000.00 |
| 11/30/21 | GasBuddy     DES:GasBuddy  ID:    IJPEYPE8R INDN:SARAH CERNIK      CO ID:1462016638 WEB | -63.52 |
| 11/30/21 | GasBuddy     DES:GasBuddy  ID:    I7A4X97JO INDN:SARAH CERNIK      CO ID:1462016638 WEB | -25.72 |
| 12/02/21 | FIGURE LENDING L DES:FIGUREPAYM ID:001638403200377 INDN:SARAH CERNIK       CO ID:9663451002 WEB | -695.95 |
| 12/02/21 | FIGURE LENDING L DES:FIGUREPAYM ID:001638403200382 INDN:SARAH CERNIK       CO ID:9663451002 WEB | -626.82 |
| 12/02/21 | Best Egg    DES:PAYMENT    ID:44229729A INDN:JOSEPH CERNIK      CO ID:2832915521 PPD | -616.08 |
| 12/03/21 | PMNT SENT  1204 VENMO* Visa Direct  NY | -1,830.00 |

*continued on the next page*

## Withdrawals and other subtractions - continued

| Date | Description | Amount |
|------|-------------|--------|
| 12/03/21 | GasBuddy DES:GasBuddy ID: I5JEVGAEN INDN:SARAH CERNIK CO ID:1462016638 WEB | -14.87 |
| 12/06/21 | PMNT SENT 1203 COINBASE https://www.fCA 24116411338400776050663 | -1,546.00 |
| 12/06/21 | CHECKCARD 1204 APPLE.COM/BILL 866-712-7753 CA 24692161338100301380907 | -7.54 |
| 12/06/21 | Bank of America Credit Card Bill Payment | -2,000.00 |
| 12/06/21 | KEEP THE CHANGE TRANSFER TO ACCT 3356 FOR 12/06/21 | -0.46 |
| 12/07/21 | PMNT SENT 1205 COINBASE https://www.fCA 24116411341400778000125 | -1,046.00 |
| 12/07/21 | COMENITY PAY CP DES:WEB PYMT ID:P21339034331211 INDN:SARAH CERNIK CO ID:1651180275 WEB | -80.00 |
| 12/08/21 | SYNCHRONY BANK DES:PAYMENT ID:601918341132554 INDN:CERNIK,SARAH CO ID:1061537262 WEB | -100.00 |
| 12/08/21 | GasBuddy DES:GasBuddy ID: IA4XBBR9Y INDN:SARAH CERNIK CO ID:1462016638 WEB | -47.08 |
| 12/08/21 | GasBuddy DES:GasBuddy ID: I4YZKKVO9 INDN:SARAH CERNIK CO ID:1462016638 WEB | -27.26 |
| 12/08/21 | GasBuddy DES:GasBuddy ID: IEMGVVRP7 INDN:SARAH CERNIK CO ID:1462016638 WEB | -20.13 |
| 12/09/21 | AMERICAN EXPRESS DES:ACH PMT ID:M3102 INDN:Sarah Cernik CO ID:1133133497 WEB | -500.00 |
| 12/10/21 | DoNotPay DES:DoNotPay ID:ST-F7O0Z6U9S9T9 INDN:DONOTPAY INC CO ID:1800948598 CCD | -36.00 |
| 12/13/21 | CHECKCARD 1210 APPLE.COM/BILL 866-712-7753 CA 24692161344100417167471 | -5.39 |
| 12/13/21 | WINCO FOODS #7 12/11 #000743524 PURCHASE WINCO FOODS #70 9 Spokane Valle WA | -158.63 |
| 12/13/21 | THE HOME DEPOT 12/11 #000105715 PURCHASE THE HOME DEPOT 47 LIBERTY LAKE WA | -141.94 |
| 12/13/21 | PMNT SENT 1212 COINBASE https://www.fCA 24116411347400774182186 | -3,000.00 |
| 12/13/21 | AMERICAN EXPRESS DES:ACH PMT ID:M5390 INDN:Sarah Cernik CO ID:1133133497 WEB | -400.00 |
| 12/13/21 | KEEP THE CHANGE TRANSFER TO ACCT 3356 FOR 12/13/21 | -1.04 |
| 12/14/21 | Synchrony Bank DES:CC PYMT ID:650159005950126 INDN:JOSEPH A CERNIK CO ID:9856794001 WEB | -1,253.81 |
| 12/14/21 | SYNCHRONY BANK DES:PAYMENT ID:650159005950126 INDN:CERNIK,JOSEPH A CO ID:1061537262 WEB | -90.00 |
| 12/14/21 | KOHL'S DES:CHG PYMT ID:043000095409468 INDN:CERNIK SARAH CO ID:9044021343 WEB | -50.00 |
| 12/14/21 | PAYPAL DES:INST XFER ID:IPVANISH INDN:SARAH CERNIK CO ID:PAYPALSI77 WEB | -10.99 |
| 12/15/21 | PMNT SENT 1214 COINBASE https://www.fCA 24116411349400776553390 | -4,456.00 |

**Total withdrawals and other subtractions**     **-$145,955.12**

## Service fees

**Your Overdraft and NSF: Returned Item fees for this statement period and year to date are shown below.**

|  | Total for this period | Total year-to-date |
|---|---|---|
| Total Overdraft fees | $0.00 | $70.00 |
| Total NSF: Returned Item fees | $0.00 | $70.00 |

**We want to help you avoid overdraft and returned item fees.  Here are a few ways to manage your account and stay on top of your balance:**

-   Enroll in Balance Connect™ for overdraft protection through Online or Mobile Banking to help save on overdraft fees and cover your payments and purchases by automatically transferring money from your linked backup accounts when needed.
-   Sign up for Alerts (footnote 1) to get an email or text message when your balance becomes low

Please call us or visit us if you have any questions or to discuss your options.

(footnote 1) You may elect to receive alerts via text or email. Bank of America does not charge for this service but your mobile carrier's message and data rates may apply. Delivery of alerts may be affected or delayed by your mobile carrier's coverage.

| Date | Transaction description | Amount |
|---|---|---|
| 11/29/21 | CHECKCARD  1128 MOONPAY 7534 MALTA 74697691333910014287178 INTERNATIONAL TRANSACTION FEE | -240.00 |
| 11/29/21 | CHECKCARD  1126 MOONPAY 5486 MALTA 74697691331910025702845 INTERNATIONAL TRANSACTION FEE | -150.00 |
| 11/29/21 | CHECKCARD  1126 MOONPAY 8575 MALTA 74697691331910049293458 INTERNATIONAL TRANSACTION FEE | -105.00 |
| 11/29/21 | CHECKCARD  1127 www paybis com INTERNET 24012121133105298778857 INTERNATIONAL TRANSACTION FEE | -90.00 |
| 11/30/21 | CHECKCARD  1129 MOONPAY 9239 MALTA 74697691334910018267704 INTERNATIONAL TRANSACTION FEE | -180.00 |

**Total service fees** **-$765.00**

*Note your Ending Balance already reflects the subtraction of Service Fees.*



Account number: [redacted] 3356

# Your Regular Savings

**SARAH CERNIK JOSEPH CERNIK**

## Account summary

| | |
|---|---|
| Beginning balance on November 11, 2021 | $1.33 |
| Deposits and other additions | 40,997.02 |
| Withdrawals and other subtractions | -40,900.00 |
| Service fees | -15.00 |
| **Ending balance on December 15, 2021** | **$83.35** |

*Annual Percentage Yield Earned this statement period: 0.01%.*
*Interest Paid Year To Date: $0.21.*

## Deposits and other additions

| Date | Description | Amount |
|---|---|---|
| 11/12/21 | Online Banking transfer from CHK 3343 Confirmation# 2275683832 | 40,000.00 |
| 11/15/21 | KEEPTHECHANGE CREDIT FROM ACCT3343 EFFECTIVE 11/12 | 1.26 |
| 11/17/21 | KEEPTHECHANGE CREDIT FROM ACCT3343 EFFECTIVE 11/16 | 0.98 |
| 11/22/21 | KEEPTHECHANGE CREDIT FROM ACCT3343 EFFECTIVE 11/19 | 0.27 |
| 11/23/21 | KEEPTHECHANGE CREDIT FROM ACCT3343 EFFECTIVE 11/22 | 0.30 |
| 11/26/21 | KEEPTHECHANGE CREDIT FROM ACCT3343 EFFECTIVE 11/24 | 0.01 |
| 11/30/21 | KEEPTHECHANGE CREDIT FROM ACCT3343 EFFECTIVE 11/29 | 0.09 |
| 12/02/21 | Square Inc DES:* Cash App ID:T200426230670 INDN:Sarah Cernik CO ID:8800429876 CCD | 992.40 |
| 12/07/21 | KEEPTHECHANGE CREDIT FROM ACCT3343 EFFECTIVE 12/06 | 0.46 |
| 12/14/21 | KEEPTHECHANGE CREDIT FROM ACCT3343 EFFECTIVE 12/13 | 1.04 |
| 12/15/21 | Interest Earned | 0.21 |
| **Total deposits and other additions** | | **$40,997.02** |

## Withdrawals and other subtractions

| Date | Description | Amount |
|---|---|---|
| 11/26/21 | Online Banking transfer to CHK 3343 Confirmation# 2296881641 | -10,000.00 |
| 11/29/21 | Online Banking transfer to CHK 3343 Confirmation# 2312317101 | -10,000.00 |
| 11/29/21 | Online Banking transfer to CHK 3343 Confirmation# 2420930685 | -10,000.00 |
| 12/06/21 | Zelle Transfer Conf# xqh5hvgud; SARAH CERNIK | -3,500.00 |

*continued on the next page*

## Withdrawals and other subtractions - continued

| Date | Description | Amount |
|------|-------------|-------:|
| 12/06/21 | Online Banking transfer to CHK 3343 Confirmation# 6581804234 | -2,000.00 |
| 12/13/21 | Zelle Transfer Conf# zmrmlxh7d; SARAH CERNIK | -2,000.00 |
| 12/13/21 | Online Banking transfer to CHK 3343 Confirmation# 3132402722 | -3,400.00 |
| **Total withdrawals and other subtractions** | | **-$40,900.00** |

## Service fees

| Date | Transaction description | Amount |
|------|-------------------------|-------:|
| 12/15/21 | Withdrawal Limit Fee | -10.00 |
| 12/15/21 | Monthly Maintenance Fee | -5.00 |
| **Total service fees** | | **-$15.00** |

*Note your Ending Balance already reflects the subtraction of Service Fees.*

# Important Messages - Please Read

We want to make sure you stay up-to-date on changes, reminders, and other important details that could impact you.

**Important Information – The terms for waiving the monthly maintenance fee for Students on Bank of America Advantage SafeBalance and Bank of America Advantage Plus account settings are changing.**

Please review these changes and effective dates to make sure you understand how they may affect you.

Beginning November 12, 2021, Students can now qualify for a monthly maintenance fee waiver up until the age of 25 (previously 24 years) on SafeBalance Banking and Advantage Plus Banking accounts. This benefit is available when you notify us that an account owner is a student under 25 who is enrolled in school or an educational or vocational program. Please keep in mind, these waivers will no longer apply when the Student turns 25, ceases to be an owner of the account, or notifies us that they are no longer enrolled in school or an educational or vocational program.

Effective February 18, 2022, the Student waiver will no longer be available to be applied on Bank of America Advantage Plus accounts. However, if the Student waiver was applied to an Advantage Plus account BEFORE February 18, 2022, we will continue to waive the monthly maintenance fee until the Student turns 25, is no longer an owner of the account, or notifies us they are no longer enrolled in school or an educational or vocational program (Footnote 1).

**We are here to help**

To request the Student waiver or to talk about account options, feel free to schedule an appointment with us at bankofamerica.com/appointments.

(Footnote 1) As a reminder, to avoid the $12 monthly fee on the Advantage Plus account, you must meet ONE of the following each statement cycle: Have at least one qualifying direct deposit of $250 or more, OR Keep a minimum daily balance of $1,500 or more in your account, OR Enroll in the Preferred Rewards program and qualify for the Gold, Platinum or Platinum Honors tier (first 4 checking accounts) or Diamond or Diamond Honors tier (unlimited). For more information about all Advantage Banking accounts, please review the Personal Schedule of Fees at bankofamerica.com/fees.

---

This page intentionally left blank

**EXHIBIT C**


**BANK OF AMERICA**

P.O. Box 15284
Wilmington, DE 19850

SARAH CERNIK
JOSEPH CERNIK
611 S ARTIES LN
SPOKANE VLY, WA 99016-7754

**Customer service information**

📱 Customer service: 1.800.432.1000

En Español: 1.800.688.6086

🖥 bankofamerica.com

✉ Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

# Your combined statement

for May 13, 2022 to June 13, 2022

| Your deposit accounts | Account/plan number | Ending balance | Details on |
|---|---|---|---|
| Adv Plus Banking | ███ 3343 | -$356.57 | Page 3 |
| Regular Savings | ███ 3356 | $38.01 | Page 7 |
| **Total balance** | | **-$318.56** | |



## New! Scan & pay an easier way

Securely pay people in a snap when you scan their unique **Zelle® QR code** without manually entering contact information.

**Download the app and start sending money today.**

[1] Zelle and the Zelle related marks are wholly owned by Early Warning Services, LLC and are used herein under license.

[2] Mobile Banking requires that you download the Mobile Banking app and is only available for select mobile devices. Message and data rates may apply.

SSM-01-22-2811.B | 4336404

PULL: B   CYCLE: 2   SPEC: E   DELIVERY: E   TYPE:   IMAGE: A   BC: ID

# IMPORTANT INFORMATION:
## BANK DEPOSIT ACCOUNTS

How to Contact Us - You may call us at the telephone number listed on the front of this statement.

Updating your contact information - We encourage you to keep your contact information up-to-date. This includes address, email and phone number. If your information has changed, the easiest way to update it is by visiting the Help & Support tab of Online Banking.

Deposit agreement - When you opened your account, you received a deposit agreement and fee schedule and agreed that your account would be governed by the terms of these documents, as we may amend them from time to time. These documents are part of the contract for your deposit account and govern all transactions relating to your account, including all deposits and withdrawals. Copies of both the deposit agreement and fee schedule which contain the current version of the terms and conditions of your account relationship may be obtained at our financial centers.

Electronic transfers: In case of errors or questions about your electronic transfers - If you think your statement or receipt is wrong or you need more information about an electronic transfer (e.g., ATM transactions, direct deposits or withdrawals, point-of-sale transactions) on the statement or receipt, telephone or write us at the address and number listed on the front of this statement as soon as you can. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number.
- Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

For consumer accounts used primarily for personal, family or household purposes, we will investigate your complaint and will correct any error promptly. If we take more than 10 business days (10 calendar days if you are a Massachusetts customer) (20 business days if you are a new customer, for electronic transfers occurring during the first 30 days after the first deposit is made to your account) to do this, we will provisionally credit your account for the amount you think is in error, so that you will have use of the money during the time it will take to complete our investigation.

For other accounts, we investigate, and if we find we have made an error, we credit your account at the conclusion of our investigation.

Reporting other problems - You must examine your statement carefully and promptly. You are in the best position to discover errors and unauthorized transactions on your account. If you fail to notify us in writing of suspected problems or an unauthorized transaction within the time period specified in the deposit agreement (which periods are no more than 60 days after we make the statement available to you and in some cases are 30 days or less), we are not liable to you and you agree to not make a claim against us, for the problems or unauthorized transactions.

Direct deposits - If you have arranged to have direct deposits made to your account at least once every 60 days from the same person or company, you may call us to find out if the deposit was made as scheduled. You may also review your activity online or visit a financial center for information.

© 2022 Bank of America Corporation

Bank of America, N.A. Member FDIC and  Equal Housing Lender



Account number: ████ 3343

# Your Adv Plus Banking

**SARAH CERNIK    JOSEPH CERNIK**

## Account summary

| | |
|---|---:|
| Beginning balance on May 13, 2022 | $0.26 |
| Deposits and other additions | 3,202.39 |
| Withdrawals and other subtractions | -3,559.22 |
| Checks | -0.00 |
| Service fees | -0.00 |
| **Ending balance on June 13, 2022** | **-$356.57** |

## Deposits and other additions

| Date | Description | Amount |
|---|---|---:|
| 05/13/22 | KINGSOFT WATER C DES:QUICKBOOKS ID:XXXXXXXXX INDN:CERNIK, JOSEPH A        CO ID:1722616653 PPD | 956.29 |
| 05/17/22 | RETURN OF POSTED CHECK / ITEM (RECEIVED ON 05-16) | 39.56 |
| 05/17/22 | RETURN OF POSTED CHECK / ITEM (RECEIVED ON 05-16) | 23.00 |
| 05/17/22 | RETURN OF POSTED CHECK / ITEM (RECEIVED ON 05-16) | 17.40 |
| 05/17/22 | RETURN OF POSTED CHECK / ITEM (RECEIVED ON 05-16) | 10.47 |
| 05/18/22 | RETURN OF POSTED CHECK / ITEM (RECEIVED ON 05-17) | 92.85 |
| 05/19/22 | Online Banking transfer from CHK 5608 Confirmation# 1297367656 | 25.00 |
| 05/23/22 | RETURN OF POSTED CHECK / ITEM (RECEIVED ON 05-20) | 71.56 |
| 05/23/22 | RETURN OF POSTED CHECK / ITEM (RECEIVED ON 05-20) | 29.00 |
| 05/24/22 | RETURN OF POSTED CHECK / ITEM (RECEIVED ON 05-23) | 342.51 |

*continued on the next page*

---

## Opt in to unusual activity notifications

Want another way to be notified of unusual account activity? We already send text or email alerts,
but push notifications let you verify transactions or report fraud right from your phone.

 Scan this code with your phone to review your alert settings
or to download our Mobile app.

Mobile Banking requires that you download the Mobile Banking app and is only available for select mobile devices. Message and data rates may apply.
When you use the QRC feature certain information is collected from your mobile device for business purposes.          SSM-01-22-2807.B | 4206946

## Deposits and other additions - continued

| Date | Description | Amount |
|---|---|---|
| 05/24/22 | RETURN OF POSTED CHECK / ITEM (RECEIVED ON 05-23) | 63.00 |
| 05/24/22 | PAID LEAVE WA   DES:BENEFITS  ID:5647690623BFL INDN:Joseph Cernik     CO ID:9916001099 PPD | 67.00 |
| 05/25/22 | RETURN OF POSTED CHECK / ITEM (RECEIVED ON 05-24) | 122.90 |
| 05/31/22 | RETURN OF POSTED CHECK / ITEM (RECEIVED ON 05-27) | 122.90 |
| 06/01/22 | RETURN OF POSTED CHECK / ITEM (RECEIVED ON 05-31) | 273.85 |
| 06/01/22 | RETURN OF POSTED CHECK / ITEM (RECEIVED ON 05-31) | 100.00 |
| 06/01/22 | RETURN OF POSTED CHECK / ITEM (RECEIVED ON 05-31) | 39.56 |
| 06/02/22 | RETURN OF POSTED CHECK / ITEM (RECEIVED ON 06-01) | 92.85 |
| 06/02/22 | RETURN OF POSTED CHECK / ITEM (RECEIVED ON 06-01) | 92.85 |
| 06/06/22 | RETURN OF POSTED CHECK / ITEM (RECEIVED ON 06-03) | 29.99 |
| 06/08/22 | RETURN OF POSTED CHECK / ITEM (RECEIVED ON 06-07) | 80.00 |
| 06/09/22 | RETURN OF POSTED CHECK / ITEM (RECEIVED ON 06-08) | 17.40 |
| 06/09/22 | RETURN OF POSTED CHECK / ITEM (RECEIVED ON 06-08) | 9.99 |
| 06/10/22 | RETURN OF POSTED CHECK / ITEM (RECEIVED ON 06-09) | 402.46 |
| 06/13/22 | RETURN OF POSTED CHECK / ITEM (RECEIVED ON 06-10) | 80.00 |
| **Total deposits and other additions** | | **$3,202.39** |

## Withdrawals and other subtractions

| Date | Description | Amount |
|---|---|---|
| 05/13/22 | Online Banking transfer to CHK 5608 Confirmation# 6443730610 | -731.00 |
| 05/13/22 | SEEDFI       DES:PREAUTHPMT ID:  INDN:SARAH CERNIK       CO ID:1833918946 WEB | -100.00 |
| 05/13/22 | PAYPAL       DES:INST XFER ID:APPLE.COM BILL INDN:SARAH CERNIK       CO ID:PAYPALSI77 WEB | -8.37 |
| 05/16/22 | CHECKCARD 0513 SOLO FUNDS INC 213-2387176 AR 24253622134000000664593 | -117.00 |
| 05/16/22 | PAYPAL       DES:RETRY PYMT ID:HOME CHEF 10643 INDN:SARAH CERNIK       CO ID:PAYPALSI77 WEB | -39.56 |
| 05/16/22 | DISCOVER       DES:PAYMENTS  ID:0681 INDN:CERNIK JOSEPH       CO ID:3510020270 WEB | -23.00 |
| 05/16/22 | PAYPAL       DES:RETRY PYMT ID:SPOTIFYUSAI INDN:SARAH CERNIK       CO ID:PAYPALSI77 WEB | -17.40 |
| 05/16/22 | PAYPAL       DES:RETRY PYMT ID:APPLE.COM BILL INDN:SARAH CERNIK       CO ID:PAYPALSI77 WEB | -10.47 |
| 05/17/22 | FINWISERISEPMT  DES:PAYMENT   ID:000000001556437 INDN:SARAH CERNIK       CO ID:4981449420 WEB | -92.85 |
| 05/19/22 | DISCOVER       DES:RETRY PYMT ID:0681 INDN:CERNIK JOSEPH       CO ID:3510020270 PPD | -23.00 |
| 05/20/22 | NAVIENT-FDR     DES:AUTOPAY   ID:BR Sarah Cernik INDN:5029350483526450       CO ID:2541843973 PPD | -71.56 |
| 05/20/22 | CAPITAL ONE     DES:CRCARDPMT ID:3LS9S6HVO8EIEXA INDN:SARAH CERNIK       CO ID:9541719318 WEB | -29.00 |

*continued on the next page*

## Withdrawals and other subtractions - continued

| Date | Description | Amount |
|---|---|---|
| 05/23/22 | SPOTLOAN     DES:DEBIT     ID:C22052016004275  INDN:Sarah Cernik          CO ID:1800827294 PPD | -342.51 |
| 05/23/22 | BEST BUY     DES:AUTO PYMT ID:720728250660623  INDN:SARAH CERNIK          CO ID:CITIAUTFDR WEB | -63.00 |
| 05/24/22 | FIDELITY     DES:FPRS     ID:65642 XXXXX6112  INDN:SARAH CERNIK          CO ID:9000163002 PPD | -122.90 |
| 05/26/22 | BEST BUY     DES:RETRY PYMT ID:720728250660623  INDN:SARAH CERNIK          CO ID:CITIAUTFDR WEB | -63.00 |
| 05/27/22 | FIDELITY     DES:RETRY PYMT ID:65642 XXXXX6112  INDN:SARAH CERNIK          CO ID:9000163002 PPD | -122.90 |
| 05/31/22 | UPSTART NETWORK  DES:UPST LOANS ID:147531  INDN:SARAH CERNIK          CO ID:2454660612 WEB  PMT INFO:FM 32112582 BORROWER_PAYMT | -273.85 |
| 05/31/22 | SEEDFI     DES:PREAUTHPMT ID:  INDN:SARAH CERNIK          CO ID:1833918946 WEB | -100.00 |
| 05/31/22 | PAYPAL     DES:RETRY PYMT ID:1020345925869  INDN:SARAH CERNIK          CO ID:PAYPALRP44 WEB | -39.56 |
| 06/01/22 | FINWISERISEPMT  DES:RETRY PYMT ID:000000001556437  INDN:SARAH CERNIK          CO ID:4981449420 WEB | -92.85 |
| 06/01/22 | FINWISERISEPMT  DES:PAYMENT     ID:000000001556437  INDN:SARAH CERNIK          CO ID:4981449420 WEB | -92.85 |
| 06/03/22 | COINBASE INC.  DES:8889087930 ID:RTL-EPBM6JPG  INDN:SARAH CERNIK          CO ID:1327000623 WEB | -29.99 |
| 06/07/22 | COMENITY PAY CP  DES:WEB PYMT  ID:P22156089354351  INDN:SARAH CERNIK          CO ID:1651180275 WEB | -80.00 |
| 06/08/22 | PAYPAL     DES:INST XFER  ID:SPOTIFYUSAI  INDN:SARAH CERNIK          CO ID:PAYPALSI77 WEB | -17.40 |
| 06/08/22 | PAYPAL     DES:INST XFER  ID:APPLE.COM BILL  INDN:SARAH CERNIK          CO ID:PAYPALSI77 WEB | -9.99 |
| 06/09/22 | TALLY TECH     DES:TALLY     ID:  INDN:Sarah Cernik          CO ID:2473932324 WEB | -402.46 |
| 06/09/22 | PAYPAL     DES:INST XFER  ID:APPLE.COM BILL  INDN:SARAH CERNIK          CO ID:PAYPALSI77 WEB | -5.23 |
| 06/10/22 | COMENITY PAY CP  DES:RETRY PYMT ID:P22156089354351  INDN:SARAH CERNIK          CO ID:1651180275 WEB | -80.00 |
| 06/13/22 | §§UPSTART NETWORK  DES:UPST LOANS ID:147531  INDN:SARAH CERNIK          CO ID:2454660612 WEB  PMT INFO:FM 33219432 BORROWER_PAYMT | -288.85 |
| 06/13/22 | §§DoNotPay     DES:DoNotPay  ID:ST-Y4U6A8G7J6W7  INDN:DONOTPAY INC          CO ID:1800948598 CCD | -36.00 |
| 06/13/22 | §§PAYPAL     DES:INST XFER  ID:TAKECAREOF  INDN:SARAH CERNIK          CO ID:PAYPALSI77 WEB | -32.67 |

**Total withdrawals and other subtractions**                                         **-$3,559.22**

*§§ There were not enough funds available in your account to cover the electronic transaction(s) received on 06/13/22.  The transaction(s) indicated have been returned. The re-deposit of these amount(s) will be reflected on your next statement.*

Braille and Large Print Request - You can request a copy of this statement in Braille or Large Print by calling 800.432.1000 or going to bankofamerica.com and enter Visually Impaired Access from the home page.


# Your Regular Savings

**SARAH CERNIK    JOSEPH CERNIK**

## Account summary

| | |
|---|---|
| Beginning balance on May 13, 2022 | $43.01 |
| Deposits and other additions | 0.00 |
| Withdrawals and other subtractions | -0.00 |
| Service fees | -5.00 |
| **Ending balance on June 13, 2022** | **$38.01** |

*Interest Paid Year To Date: $0.14.*

## Service fees

| Date | Transaction description | Amount |
|---|---|---|
| 06/13/22 | Monthly Maintenance Fee | -5.00 |
| **Total service fees** | | **-$5.00** |

*Note your Ending Balance already reflects the subtraction of Service Fees.*

This page intentionally left blank

This page intentionally left blank

This page intentionally left blank